**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES WOODS, MIA POSEY and VINCENT BOCK, for themselves and all others similarly situated, ) <br><br> Plaintiffs, <br> v. <br><br> FIRST TRANSIT, INC., <br><br> Defendant. | Case No. <br><br> JUDGE <br><br> JURY TRIAL DEMANDED |

**COLLECTIVE AND CLASS ACTION COMPLAINT**

James Woods, Mia Posey and Vincent Bock ("Plaintiffs") hereby make the following allegations against First Transit, Inc. ("Defendant") concerning their acts and status upon actual knowledge and concerning all other matters upon information, belief and the investigation of their counsel:

**NATURE OF THE ACTION**

1.      Defendant's business includes providing public transportation services. Plaintiffs, former fixed-route bus drivers, bring this action for violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and the state laws of Ohio, California, and New York, challenging common scheduling, timekeeping and compensation policies and practices that failed to provide Defendant's fixed-route bus drivers legally mandated wages due for work they performed with Defendant's knowledge and for its benefit.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 29  U.S.C. §216(b) and 28 U.S.C. §§ 1331.

1

3.     This Court has supplemental jurisdiction over Plaintiffs' Ohio, California, and New York state-law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

5.     Plaintiff James Woods is an adult citizen of Ohio who resides in Lorain County. Mr. Woods worked as a full-time, hourly First Transit fixed-route bus driver in Lorain County, Ohio from October 2018 to April 2019 and is personally familiar with, and has been personally affected by, the policies and practices described in this Complaint. Mr. Woods has signed and filed a Consent Form to join this litigation. *See* Woods Consent Form (Exhibit A).

6.     Plaintiff Mia Posey is an adult citizen of California who resides in Alameda County. Ms. Posey worked as a full-time, hourly First Transit fixed-route bus driver in California from June 2018 to July 2019 and is personally familiar with, and has been personally affected by, the policies and practices described in this Complaint. Ms. Posey has signed and filed a Consent Form to join this litigation. *See* Posey Consent Form (Exhibit B).

7.     Plaintiff Vincent Bock is an adult citizen of New York who resides in Allegany County. Mr. Bock worked as a full-time, hourly First Transit fixed-route bus driver in Cuba, New York and Wellsville New York. from early 2016 to February 2020 and is personally familiar with, and has been personally affected by, the policies and practices described in this Complaint. Mr. Bock has signed and filed a Consent Form to join this litigation. *See* Bock Consent Form (Exhibit C).

8.     Defendant First Transit, Inc. ("First Transit") is a Florida foreign for-profit corporation based in Cincinnati, Ohio. *See http://www.firstgroupplc.com/about-firstgroup/first-transit.aspx* (accessed Feb. 16, 2021); *https://www.corporationwiki.com/Ohio/Cincinnati/first-transit-inc-3603701.aspx* (accessed Feb. 16, 2021). "First Transit is one of the largest private

sector providers of public transit management and contracting in North America," employing 19,500 people and providing fixed-route bus services, paratransit services, shuttle bus services, and vehicle maintenance services from 300 locations in 39 states. *See https://www.firstgroup plc.com/~/media/Files/F/Firstgroup-Plc/signpost-documents/2019-factsheets/first-transit-2019-lr-final.pdf* (accessed Feb. 16, 2021).

9.    Throughout the relevant period, Defendant has owned and exercised operational control over all significant business functions relating to its fixed-route bus drivers, including setting and implementing the scheduling; timekeeping and compensation policies and practices at issue in this matter; providing training on these policies and practices; scheduling their work; tracking their work time; and setting, calculating, and paying their wages.

## FACTS

10.    Defendant's fixed-route bus drivers typically provide public transportation services that include operating 15- to 60-passenger vehicles along a fixed-route, picking up and dropping off passengers at designated stops at designated times, collecting fares, cleaning and maintaining their vehicles, completing paperwork and performing related work.

11.    Defendant maintains common scheduling, timekeeping and compensation policies and practices for its fixed-route bus drivers nationwide.

### Failure to Pay for Pre-Shift Work

12.    Each day, Defendant assigns its fixed-route bus drivers a shift start-time (i.e., 4:15 a.m.), which represents the time Defendant expects them to drive their assigned bus out of their assigned depot and begin their route.

13.    To begin their route on time, Defendant's fixed-route bus drivers must arrive at work about 20–30 minutes before their scheduled shift start-time to perform work-related activities that include walking from the depot parking lot to the dispatch office to receive their vehicle

assignment, manifest and keys, walking back from the dispatch office to the parking lot to find their assigned vehicle, and performing a pre-trip inspection (e.g., checking the exterior and interior of the vehicle for damage, checking the fuel level, cleaning the vehicle).

14.    After completing their pre-shift routine, Defendant's fixed-route bus drivers start their vehicle and drive it out of the depot, at which time Defendant begins tracking their time for payroll purposes.

15.    By allowing its fixed-route bus drivers to perform 20–30 minutes of work-related tasks before going on-the-clock each day, Defendant avoids paying them for approximately 1.67 to 2.5 overtime work hours each week.

16.     Defendant could avoid these pre-shift timekeeping errors by (1) requiring its fixed-route bus drivers to clock-in upon arriving at the depot or (2) requiring dispatchers to record the time that Defendant's fixed-route bus drivers arrive at the dispatch office as their shift start time for payroll purposes.

**Failure to Pay for Post-Shift Work**

17.    When Defendant's fixed-route bus drivers drive their vehicle back into their assigned depot at the end of their shift, Defendant stops tracking their time for payroll purposes.

18.    After returning to their depot, Defendant's fixed-route bus drivers must spend 30-45 minutes on work-related activities that include: waiting in line to re-fuel their vehicle, re-fueling their vehicle, parking their vehicle, performing a post-trip inspection (e.g., checking the exterior and interior of the vehicle for damage, cleaning the vehicle), completing all required paperwork, walking from the depot parking lot to the dispatch office, waiting in line to turn-in their keys and paperwork and turning-in their keys and paperwork.

19.    Only after completing their post-shift routine are Defendant's fixed-route bus drivers allowed to leave work and go home.

20.     By requiring its fixed-route bus drivers to perform 30–45 minutes of work-related tasks after going off-the-clock each day, Defendant avoids paying them for another approximately 2.5 to 3.75 overtime work hours each week.

21.     Defendant could avoid these post-shift timekeeping errors by (1) requiring its fixed-route bus drivers to clock-out as they leave the depot or (2) requiring Dispatchers to record the time Defendant's fixed-route bus drivers leave the dispatch office to go home as their shift end time for payroll purposes.

**<u>Failure to Pay for Meal Break Work</u>**

22.     Defendant promises its fixed-route bus drivers an unpaid 30-minute meal break each day and automatically deducts 30 minutes from their work time without giving any consideration to whether they receive a full 30-minute meal break.

23.     Many of Defendant's fixed-route bus drivers are scheduled to take their meal break at a specific time of day (i.e., from 8:58 a.m. to 9:28 a.m.). Drivers who are assigned a specific timeframe for their meal break must take their meal break during that time and may not continue their meal break past the scheduled end-time if, for whatever reason, they cannot begin their meal break on time. Approximately twice each week, because of delays related to traffic, riders, or other causes, Defendant's fixed-route bus drivers cannot begin their scheduled meal break on time and typically receive no more than a fifteen-minute meal break.

24.     Some of Defendant's fixed-route bus drivers are not assigned a specific timeframe for their meal break and, instead, are told to take their meal break when they can. Because of the demands of their schedules and routes, Defendant's fixed-route bus drivers who are not assigned a specific timeframe for their meal rarely receive any meal break at all during their shift, much less a full 30-minutes free from work.

25.     Defendant does not maintain any system for its fixed-route bus drivers to report a shortened or missed meal break, or request reversal of the automatic meal break deduction. As a result, Defendant does not pay its fixed-route bus drivers for any of their shortened or missed meal breaks.

26.     By allowing its fixed-route bus drivers to experience shortened and missed meal breaks without pay between two and five times per week, Defendant avoids paying them for between one and two-and-a-half overtime work hours each week.

27.      Defendant could avoid this meal break timekeeping error by (1) scheduling or otherwise providing for its fixed-route bus drivers to have a 30-minute meal break free from work each day; (2) allowing its fixed-route bus drivers to take a full 30 minutes off beginning from the time they start their meal break each day; and (3) providing them with a procedure to report shortened or missed meal breaks and request reversal of the automatic meal break deduction.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

### FLSA Collective Action Allegations

28.     Plaintiffs bring their FLSA collective claim on an opt-in, collective basis pursuant to 29 U.S.C. § 216(b) for all people who have worked as a fixed-route bus driver for Defendant in any location nationwide during the maximum limitations period (the "FLSA collective"). Plaintiffs reserve the right to amend this definition as necessary.

29.     Plaintiffs belong to the FLSA Collective because they worked as fixed-route bus drivers for Defendant during the relevant period.

30.     The FLSA Collective is "similarly situated," as defined by 29 U.S.C. § 216(b), because its members performed similar jobs under similar scheduling, timekeeping and compensation policies and practices.

31.     Plaintiffs and the FLSA Collective members do not meet any test for exemption under the FLSA.

32.     Based on publicly available information on Defendant's website, Plaintiffs reasonably believe the FLSA Collective may include several thousand members. *See https://www.firstgroupplc.com/~/media/Files/F/Firstgroup-Plc/signpost-documents/2019-fact sheets/first-transit-2019-lr-final.pdf* (accessed Feb. 16, 2021).

33.     Defendant's timekeeping, payroll and personnel records, among other documents, will confirm the total number of people who qualify to participate in the FLSA Collective.

### Rule 23 Class Action Allegations

34.     Plaintiff Woods brings additional claims under Fed. R. Civ. P. 23 for violations of Ohio law for all people who have worked as a fixed-route bus driver for Defendant in Ohio since April 5, 2018 (the "Ohio Class").

35.     Plaintiff Posey brings additional claims under Fed. R. Civ. P. 23 for violations of California law for all people who have worked as a fixed-route bus driver for First Transit in California since April 5, 2018 (the "California Class").

36.     Plaintiff Bock brings additional claims under Fed. R. Civ. P. 23 for violations of New York law for all people who have worked as a fixed-route bus driver for First Transit in New York since April 5, 2015 (the "New York Class").

37.     Class treatment of Plaintiffs' Ohio, California, and New York claims is  appropriate because these Classes satisfy the requirements of Fed. R. Civ. P. 23.

38.     The Ohio, California, and New York Classes are each so numerous that joinder of their individual members would be  impracticable. During the relevant period, hundreds of people have worked as fixed-route bus drivers for Defendant in each of these states.

39.     Plaintiffs' claims are typical of the claims belonging to  the members of their respective Class, and no Plaintiff has any interests that are antagonistic to, or in  conflict with, the interests of the members of their respective Class.

40.     Many legal and factual questions and answers common to the claims of the Ohio, California, and New York class members exist because this action concerns the legality of Defendant's nationwide policies and practices. The legality of these policies and practices will be determined by applying generally applicable legal principles to common evidence.

41.     Plaintiffs will fairly and adequately represent the interests of the Ohio, California, and New York Class members and  have retained competent and experienced counsel for this purpose.

42.     Class certification is appropriate under Federal Rule of Civil  Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting individual Ohio, California, and New York Class members and because a class action is superior to other  available methods for the fair and efficient adjudication of these claims.

## COUNT I
## VIOLATION OF THE FLSA
### Unpaid Overtime Wages
### (By All Plaintiffs for the FLSA Collective)

43.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

44.     Defendant is an "employer" as defined by 29 U.S.C. § 203(d).

45.     Plaintiffs and the FLSA Collective members are "employees" as defined by 29 U.S.C. § 203(e)(1).

46.     The wages Defendant pays to Plaintiffs and the FLSA Collective members are "wages" as defined by 29 U.S.C. § 203(m).

47.     Defendant is an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

48.     Plaintiffs and the FLSA Collective members are similarly situated individuals within the meaning of 29 U.S.C. § 216(b).

49.     According to 29 U.S.C. § 216(b), private plaintiffs may bring collective actions to enforce employers' failure to comply with the FLSA's requirements.

50.     Throughout the relevant period, Defendant has been obligated to comply with the FLSA's requirements, Plaintiffs and the FLSA Collective members have been covered employees entitled to the FLSA's protections, and Plaintiffs and the FLSA Collective members have not been exempt from receiving wages required by the FLSA for any reason.

51.     According to 29 U.S.C. § 207(a)(1), employers must pay their employees an overtime rate equal to at least 1½ times their regular rate of pay for all hours worked in excess of 40 hours per week.

52.     Defendant has intentionally violated the FLSA by maintaining common scheduling, timekeeping, and compensation policies and practices that knowingly deny its drivers overtime wage payments for overtime pre-shift, post-shift, and meal break work that Defendant requires them to perform as part of their job and for Defendant's benefit.

53.     Plaintiffs and the FLSA Collective have been harmed as a direct and proximate result of Defendant's unlawful conduct because Defendant has deprived them of wages owed for overtime pre-shift, post-shift, and meal break work they performed for Defendant's benefit.

54.     By failing to properly pay its drivers, Defendant has acted with willful and reckless disregard for Plaintiffs' and the FLSA Collective members' rights under the FLSA.

55.     Defendant has no good faith justification or defense for its conduct or for failing to pay Plaintiffs and the FLSA Collective members all wages required by the FLSA.

**COUNT II**
**VIOLATION OF OHIO LAW**
**Unpaid Straight-Time and Overtime Wages**
**(By Plaintiff Woods for the Ohio Class)**

56.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

57.    Defendant is an "employer" as defined in Section 34a of Article II, Ohio Constitution.

58.    The wages Defendant pays to the Ohio Class members are "wages" as defined by the OMWFSA, O.R.C. § 4111.01(A).

59.    While performing work for Defendant, Ohio Class members have been engaged in an "occupation" within the meaning of the OMWFSA, O.R.C. § 4111.02.

60.    The OMWFSA, at O.R.C. § 4111.02, requires employers to "pay each of the employer's employees at a wage rate of not less than the wage rate specified in Section 34a of Article II, Ohio Constitution."

61.    The state minimum wage rate for Ohio has been set as follows:

| Effective Date | Minimum Wage |
| --- | --- |
| January 1, 2021 | $8.80 |
| January 1, 2019 | $8.55 |
| January 1, 2018 | $8.30 |

62.    The OMWFSA, at O.R.C. § 4111.03(A), requires employers to pay their employees an overtime rate equal to at least 1½ times their regular rate of pay for all hours worked in excess of 40 hours in one workweek.

63.    Throughout the relevant period, Defendant has been obligated to comply with the OMWFSA's requirements, Ohio class members have been covered employees entitled to the OMWFSA's protections, and Ohio class members have not been exempt from receiving wages

10

required by the OMWFSA.

64.     Defendant violated Ohio law by maintaining common scheduling, timekeeping, and compensation policies and practices that do not track its fixed-route bus drivers' actual pre-shift, post-shift and meal-break work or pay required wages for this work.

65.     By engaging in this conduct, Defendant has acted with willful and reckless disregard for Ohio class members' rights under Ohio law.

66.     Defendant has no good-faith justification or defense for its conduct or for failing to pay the Ohio Class members' all wages required by Ohio law.

67.     Ohio Class members have been harmed as a direct and proximate result of Defendant's unlawful conduct because they have been deprived of legally required wages owed for pre-shift, post-shift and meal-break work they performed from which Defendant derived a direct and substantial benefit.

**COUNT III**
**VIOLATION OF OHIO LAW**
**Recordkeeping Violation**
**(By Plaintiff Woods for the Ohio Class)**

68.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

69.     The OMWFSA, at O.R.C. § 4111.00, provides that each employer:

> shall make and keep for a period of not less than three years a record of the name, address, and occupation of each of the employer's employees, the rate of pay and the amount paid each pay period to each employee, the hours worked each day and each work week by the employee, and other information as the director of commerce prescribes by rule as necessary or appropriate for the enforcement of section 4111.03 of the Revised Code, or of the rules thereunder.

70.     Defendant has violated the OMWFSA by failing to prepare and maintain an accurate record of Ohio class members' pre-shift, post-shift and meal-break work time and for the

11

fact that it paid no wages for this work.

71.     Defendant has no good faith justification or defense for failing to maintain employment records required by Ohio law.

**COUNT IV**
**VIOLATION OF CALIFORNIA LAW**
**Failure to Provide Minimum and Overtime Wages**
**(By Plaintiff Posey for the California Class)**

72.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

73.     California Labor Code § 1197 sets the minimum wage to be paid to employees as follows:

> The minimum wage for employees fixed by the commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful. This section does not change the applicability of local minimum wage laws to any entity.

74.     The California Industrial Welfare Commission has set the minimum hourly wage for non-exempt workers at companies with 26 or more employees, as follows:

| Effective Date | Minimum Wage |
|---|---|
| January 1, 2021 | $14.00 |
| January 1, 2020 | $13.00 |
| January 1, 2019 | $12.00 |
| January 1, 2018 | $11.00 |

75.     California Labor Code § 223 provides that "[w]here any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

76.     California Labor Code § 510(a) provides that California employees are entitled to receive overtime premium wages for work performed beyond eight hours in one workday and

12

beyond 40 hours in a workweek:

> Eight hours of labor constitutes a day's work. Any work in excess
> of eight hours in one workday and any work in excess of 40 hours
> in any one workweek and the first eight hours worked on the seventh
> day of work in any one workweek shall be compensated at the rate
> of no less than one and one-half times the regular rate of pay for an
> employee.

77.     Throughout the relevant period, Defendant has been obligated to comply with the
California Labor Code's requirements, the California Class members have been covered
employees entitled to the California Labor Code's protections and the California Class members
have not been exempt from receiving wages required by the California Labor Code.

78.     Defendant has violated these provisions of California law by maintaining common
scheduling, timekeeping and compensation policies and practices that do not track its fixed-route
bus drivers' actual pre-shift, post-shift and meal break work, or cause required wages to be paid
for this work.

79.     By engaging in this conduct, Defendant has acted with willful and reckless
disregard for the California Class members' rights under California law.

80.     Defendant has no good-faith justification or defense for the conduct detailed above
or for its failure to pay the California Class members all wages required by California law.

81.     The California Class members have been harmed as a direct and proximate result
of Defendant's unlawful conduct because Defendant has deprived them of legally-required wages
owed for pre-shift, post-shift and meal break work they performed from which Defendant derived
a direct and substantial benefit.

**COUNT V**
**VIOLATION OF CALIFORNIA LAW**
**Record-Keeping/Notice Violation**
**(By Plaintiff Posey for the California Class)**

82.     Each of the preceding paragraphs is incorporated by reference as though fully set

forth herein.

83.     California Labor Code § 226(a) provides that each employer:

> shall furnish to his or her employee… an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee… (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned…

84.     Defendant has violated the California Labor Code by failing to provide the California Class members with an accurate record of the pre-shift, post-shift and meal break work they performed and paying no wages for this work.

85.     Defendant has no good-faith justification or defense for failing to maintain and provide employment records required by California law.

**COUNT VI**
**VIOLATION OF CALIFORNIA LAW**
**Unfair Business Practices**
**(By Plaintiff Posey for the California Class)**

86.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

87.     California Unfair Competition Law, Business & Professions Code § 17200 prohibits businesses from engaging in unfair business practices that offend an established public policy or are immoral, unethical, oppressive, or unscrupulous.

88.     Throughout the relevant period, Defendant has been obligated to comply with the UCL's requirements, the California Class members have been covered employees entitled to the UCL's protections and the California Class members have not been exempt from receiving wages required by the UCL for any reason.

89.     Defendant's failure to pay the California Class members required wages due for all of their pre-shift, post-shift and meal break work constitutes an unfair business practice in violation

14

of UCL § 17200.

90.     The California Class members have standing to bring a UCL claim because they have suffered an injury-in-fact as a result of Defendant's conduct in that they have performed pre-shift, post-shift and meal break work without compensation as a result of Defendant's unfair business practices.

91.     Defendant has no good-faith justification or defense for engaging in unfair business practices prohibited by California law.

92.     The California Class members have been harmed as a direct and proximate result of Defendant's unlawful conduct because they have been deprived of legally-required wages owed for pre-shift, post-shift and meal break work they performed from which Defendant derived a direct and substantial benefit.

**COUNT VII**
**VIOLATION OF NEW YORK LAW**
**Unpaid Minimum Wages**
**(By Plaintiff Bock for the New York Class)**

93.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

94.     NYLL § 652 regulates the payment of minimum wages and provides that employers must pay their employees at a rate at least equal to the New York minimum wage rates provided by 12 NYCRR § 142-2.1.

95.     During the relevant period, the applicable state minimum wage rate for New York City has been set as follows:

| Effective Date | Minimum Wage |
|---|---|
| December 31, 2018 | $15.00 |
| December 31, 2017 | $13.00 |
| December 31, 2016 | $11.00 |

96.     During the relevant period, the applicable state minimum wage rate for Nassau, Suffolk, and Westchester counties has been set as follows:

| Effective Date | Minimum Wage |
|---|---|
| December 31, 2021 | $15.00 |
| December 31, 2020 | $14.00 |
| December 31, 2019 | $13.00 |
| December 31, 2018 | $12.00 |
| December 31, 2017 | $11.00 |
| December 31, 2016 | $10.00 |

97.     The applicable state minimum wage rate for the remainder of New York state has been set as follows:

| Effective Date | Minimum Wage |
|---|---|
| December 31, 2020 | $12.50 |
| December 31, 2019 | $11.80 |
| December 31, 2018 | $11.10 |
| December 31, 2017 | $10.40 |
| December 31, 2016 | $9.70 |

98.      During the relevant period, Defendant willfully violated the NYLL by paying New York Class members at hourly wage rates below the mandatory minimum wage rate applied in the locations they worked.

99.     Furthermore, pursuant to 12 NYCRR § 142-2.1(b), an employer is required to pay employees the minimum wage for time they are permitted to work or are required to be available for work at a place prescribed by the employer.

100.    During the relevant period, Defendant willfully violated the NYLL by failing to pay New York Class members for the hours they were required to be available for work at a place Defendant prescribed, including for all of their pre-shift, post-shift and meal break work.

101.     Defendant has no good faith justification or defense for failing to pay New York Class members the minimum wages mandated by 12 NYCRR § 142-2.1.

102.     NYLL § 663(1) provides that New York Class members are entitled to recover the amount of their unpaid minimum wages during the maximum statutory period, plus periods of equitable tolling; an award of costs and reasonable attorneys' fees incurred in pursuing this claim; an award of prejudgment interest paid at the applicable legal rate; and a penalty in the amount of 100% of the total payment due for the relevant period as Defendant had no good faith basis to believe its wage payments to New York Class members complied with the NYLL.

**COUNT VIII**
**VIOLATION OF NEW YORK LAW**
**Unpaid Overtime Wages**
**(By Plaintiff Bock for the New York Class)**

103.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

104.     Throughout the relevant period, the New York Class members were "employees" within the meaning of NYLL §§ 2(7), 651(5) and 190(2) and 12 NYCRR § 142-2.14.

105.     Throughout the relevant period, Defendant was an employer within the meaning of NYLL §§ 651(6) and 190(3).

106.     Throughout the relevant period, New York Class members have been entitled to the rights, protections and benefits provided under the NYLL §§ 650 *et seq*. and 190 *et seq*.

107.     New York Class members are not exempt from overtime compensation as established by the commissioner's wage orders or otherwise provided by New York state law or regulation.

108.     The NYLL provides employees with the following entitlement to overtime premium wages:

> An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 *et seq*…  In addition, an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended, except employees subject to sections 13(a)(2) and (4) of such Act, overtime at a wage rate of one and one-half times the basic minimum hourly rate.

12 NYCRR § 142-2.2.

109.     Throughout the relevant period, Defendant willfully violated the NYLL, Article 19, §§ 650, *et seq*. and 12 NYCRR § 142-2.2 by failing to pay New York Class members all wages due for pre-shift, post-shift and meal break work they performed, including overtime premium wages of not less than 1½ times the New York State minimum wage rate for each hour worked in excess of 40 hours per workweek.

110.     Defendant has no good-faith justification or defense for failing to pay New York Class members all overtime wages required by 12 NYCRR § 142-2.2.

111.     NYLL § 663(1) provides that New York Class members are entitled to recover the full amount of their wage underpayments during the maximum statutory period, plus periods of equitable tolling; an award of costs and reasonable attorneys' fees incurred in pursuing this claim; an award of prejudgment interest paid at the applicable legal rate; and a penalty in the amount of 100% of the total payment due for the relevant period as Defendant had no good-faith basis to believe its wage payments complied with the NYLL.

**COUNT IX**
**VIOLATION OF NEW YORK LAW**
**Record-Keeping Violation**
**<u>(By Plaintiff Bock for the New York Class)</u>**

112.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

113.     NYLL § 195(3) requires employers to provide employees with a wage statement each pay period that includes their regular hourly rate(s) of pay, their overtime rate(s) of pay, their number of regular hours worked and their number of overtime hours worked.

114.     Throughout the relevant period, Defendant willfully violated NYLL § 195(3) by failing to supply New York Class members with a wage statement each pay period that includes their actual pre-shift, post-shift and meal break work time and by failing to pay wages for this work.

115.     Defendant has no good-faith justification or defense for failing to provide wage statements containing all of the information mandated by NYLL § 195(3).

116.     NYLL § 198(1-b) provides that New York Class members are entitled to recover $50.00 dollars each time Defendant failed to provide them with a required wage statement during the maximum statutory period, plus periods of equitable tolling, up to a total of $5,000.00 each, plus an award of costs and reasonable attorneys' fees incurred in pursuing this claim.

WHEREFORE, Plaintiffs respectfully pray for an order:

    a.  Certifying this matter to proceed as a collective action with respect to Count I;

    b.  Certifying this matter to proceed as a class action with respect to Counts II-IX;

    c.  Finding that Defendant willfully violated the applicable provisions of the FLSA by failing to pay all required overtime wages to the FLSA Collective members;

    d.  Finding that Defendant willfully violated the applicable provisions of Ohio, California, and New York by failing to pay all required wages owed to the Ohio, California, and New York Class members and engaging in related record keeping and notice violations;

    e.  Granting judgment in favor of Plaintiffs and the FLSA Collective members against Defendant on Count I;

    f.    Granting judgment in favor of Plaintiff Woods and the Ohio Class members against Defendant on Counts II through III;

    g.    Granting judgment in favor of Plaintiff Posey and the California Class members against Defendant on Counts IV and VI;

    h.    Granting judgment in favor of Plaintiff Bock and the New York Class members against Defendant on Counts VII through IX;

    i.    Awarding all available compensatory damages in amounts to be determined;

    j.    Awarding pre-judgment interest on all compensatory damages due;

    k.    Awarding all available civil penalties and/or restitution in amounts to be determined;

    l.    Awarding all available liquidated and/or punitive damages in amounts to be determined;

    m.    Awarding a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

    n.    Awarding equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

    o.    Appointing the undersigned counsel as lead counsel;

    p.    Awarding any further relief the Court deems just, necessary, and proper; and

    q.    Maintaining jurisdiction over this action to ensure Defendant's compliance with the foregoing.

## **JURY DEMAND**

Plaintiffs demand a jury trial as to all claims so triable.


                       Respectfully Submitted,

Dated: April 5, 2021              */s/ Daniel R. Karon*
                            Daniel R. Karon (#0069394)
                            Beau D. Hollowell (#0080704)
                            **KARON LLC**
                            700 West St. Clair Avenue, Suite 200
                            Cleveland, OH  44113
                            (216) 622-1851
                            dkaron@karonllc.com

bhollowell@karonllc.com

David J. Cohen (*pro hac vice* forthcoming)
**STEPHAN ZOURAS LLP**
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836
dcohen@stephanzouras.com

James B. Zouras (*pro hac vice* forthcoming)
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, IL  60606
(312) 233-1550

*Attorneys for Plaintiffs, the Putative*
*FLSA Collective and the Putative State*
*Law Classes*