# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JAMES WOODS, et al.,** | **CASE NO. 1:21-cv-0739-PAB** |
| **Plaintiffs,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **FIRST TRANSIT, INC.,** | **MEMORANDUM OPINION AND** |
| **Defendant.** | **ORDER** |

Currently pending is Defendant First Transit, Inc.'s ("First Transit") Partial Motion to Dismiss Plaintiffs' Complaint.  (Doc. No. 15.)  Plaintiffs James Woods ("Woods"), Mia Posey ("Posey"), and Vincent Bock ("Bock") (collectively, "Plaintiffs") filed a Memorandum in Opposition on July 15, 2021, to which First Transit replied on July 28, 2021.  (Doc. Nos. 18, 20.)  For the following reasons, First Transit's Partial Motion to Dismiss is granted.

## I.  Background

Defendant First Transit is a Florida for-profit corporation, based in Cincinnati, Ohio that provides public transportation services.  (Doc. No. 1, ¶¶ 1, 8.)  Among the services it offers, First Transit operates fixed-route bus transportation in which its fixed-route drivers operate "15- to 60-passenger vehicles along a fixed-route, picking up and dropping off passengers at designated stops at designated times, collect[ ] fares, clean[ ]and maintain[ ] their vehicles, complet[e] paperwork and perform[ ] related work."  (*Id.* at ¶ 10.)  Woods, Posey, and Bock are all former full-time, hourly First Transit fixed-route drivers.  (*Id.* at ¶¶ 5-7.)  Woods drove for First Transit in Lorain County, Ohio from October 2018 to April 2019.  (*Id.* at ¶ 5.)  Posey drove for First Transit in California from June

2018 to July 2019.  (*Id.* at ¶ 6.)  Bock drove for First Transit in Cuba, New York and Wellsville, New

York from early 2016 to February 2020.  (*Id.* at ¶ 7.)

**A.      Fixed-Route Drivers' Pre-Shift Work**

Each day, Defendant assigns its fixed-route drivers a shift start-time, which is the time that

drivers should drive their buses out of their assigned depots and begin their routes.  (*Id.* at ¶ 12.)  In

order to begin their routes at their assigned shift start-time, drivers must arrive to their assigned depots

early to perform work-related activities, which take approximately 20 to 30 minutes.  (*Id.* at ¶ 13.)

These activities include walking from the parking lot to the dispatch office to retrieve their vehicle

assignments, manifests, and keys, walking from the dispatch office to their assigned vehicles in the

parking lots, and performing pre-trip inspections of their vehicles.  (*Id.*)  Only after drivers perform

these work-related activities can they start their vehicles and begin their routes, at which time

Defendant begins tracking drivers' time for payroll purposes.  (*Id.* at ¶ 14.)  According to Plaintiffs,

Defendant does not pay its drivers for these pre-shift, work related activities, and thus avoids paying

its drivers for approximately 1.67 to 2.5 overtime hours per week.  (*Id.* at ¶ 15.)

**B.      Fixed-Route Drivers' Post-Shift Work**

Fixed-route drivers' shifts end at the time they pull their vehicles back into their assigned

depots.  (*Id.* at ¶ 17.)  At that point, Defendant stops tracking drivers' time for payroll purposes.  (*Id.*)

However, after their shifts end, drivers must perform approximately 30 to 45 minutes of work-related

activities.  (*Id.* at ¶ 18.)  These activities include waiting in line to refuel and refueling their vehicles,

parking their vehicles, performing post-trip inspections, completing required paperwork, walking

from the depot parking lot to the dispatch office, waiting in line at the dispatch office, and returning

keys and paperwork to the dispatch office.  (*Id.*)  Drivers are only able to go home after they have

2

performed these various post-shift work-related activities.  (*Id.* at ¶ 19.)  According to Plaintiffs, Defendant avoids paying its drivers approximately 2.5 to 3.75 overtime hours per week by not compensating drivers for their post-shift work-related activities.  (*Id.* at ¶ 20.)

### C.    Fixed-Route Drivers' Meal Break Work

Defendant promises fixed-route drivers a 30-minute unpaid meal break each day.  (*Id.* at ¶ 22.)  Defendant automatically deducts 30 minutes from its drivers' work time without evaluating whether the drivers received a full 30-minute meal break.  (*Id.*)  Some fixed-route drivers are scheduled to take meal breaks at specific times (e.g., from 8:58 a.m. until 9:28 a.m.).  (*Id.* at ¶ 23.) Drivers assigned to specific meal break times may not continue their meal breaks past their scheduled end times, regardless of whether they started their meal breaks on time.  (*Id.*)  According to Plaintiffs, approximately twice per week, because of delays in traffic or other circumstances beyond drivers' control, drivers cannot begin their scheduled meal breaks on time and often receive no more than a 15-minute meal break.  (*Id.*)  Other fixed-route drivers are not assigned specific meal break times and instead are told to "take their meal break when they can."  (*Id.* at ¶ 24.)  According to Plaintiffs, drivers who are not assigned specific meal break times "rarely receive any meal break at all during their shift, much less a full 30-minutes free from work" because of the demands of their schedules and routes.  (*Id.*)

Plaintiffs allege that Defendant does not maintain any system for its drivers to report shortened or missed meal breaks, nor request reversal of the automatic meal break deduction.  (*Id.* at ¶ 25.)  As a result, Defendant does not pay its drivers for shortened or missed meal breaks.  (*Id.*)  Plaintiffs allege that, as a result, Defendant avoids paying its drivers approximately 1 to 2.5 overtime hours per week.  (*Id.* at ¶ 26.)

3

In addition to Plaintiffs' allegations that Defendant avoids paying its drivers for overtime accrued due to pre-/post-shift work and shortened and/or missed meal breaks, Plaintiffs also allege that Defendant failed to pay Plaintiffs minimum wages under Ohio, California, and New York state laws.  (*Id.* at ¶¶ 56-67, 72-81, 93-102.)  However, Plaintiffs' Complaint includes only factual allegations related to Defendant's alleged overtime violations and no factual allegations related to alleged minimum wage violations.  (*See id.*, ¶¶ 10-27.)

Plaintiffs filed their Complaint on behalf of themselves and all others similarly situated against Defendant on April 6, 2021.  (*Id.*)  Plaintiffs assert the following claims for relief: (1) violations of the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) ("Count 1"); (2) failure to pay straight-time and overtime wages in violation of Ohio's overtime compensation statute, Ohio Rev. C. § 4111.03 ("Count 2"); (3) violations of the Ohio Fair Minimum Wage Amendment's ("OFMWHA") record-keeping requirement, Ohio Rev. C. § 4111, *et seq.* ("Count 3"); (3) failure to pay minimum and overtime wages in violation of the California Labor Code, Cal. Lab. C. §§ 223, 510(a) ("Count 4"); (5) failure to provide accurate pay records in violation of the California Labor Code, Cal. Lab. C. § 226(a) ("Count 5"); (6) unfair business practices in violation of California's Unfair Competition Law, Cal. UCL § 17200, *et seq.* ("Count 6"); (7) failure to pay minimum wages in violation of New York Labor Law's minimum wage provisions, NYLL §§ 142-2.1, 663(1) ("Count 7"); (8) failure to pay overtime wages in violation of New York Labor Law's overtime wage provisions, NYLL §§ 142-2.2, 650 ("Count 8"); and (9) failure to provide accurate wage statements in violation of New York Labor Law's record-keeping requirements, NYLL § 195(3) ("Count 9").  (*Id.* at ¶¶ 43-116.)

Defendant filed the instant Partial Motion to Dismiss on June 14, 2021. (Doc. No. 15.) Plaintiffs filed a Memorandum in Opposition to Defendant's Motion on July 15, 2021, to which Defendant replied on July 28, 2021. (Doc. Nos. 18, 20.)

## II.    Standard of Review

### A.      Fed. R. Civ. P. 12(b)(1)

First Transit moves to dismiss Counts 4 through 9 of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1). The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction. *Wayside Church v. Van Buren County,* 847 F.3d 812, 816–17 (6th Cir. 2017). A facial attack "questions merely the sufficiency of the pleading" and requires the district court to "take[] the allegations in the complaint as true." *Gentek Bldg Prods., Inc. v. Sherwin-Williams Co.,* 491 F.3d 320, 330 (6th Cir. 2007). To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction. *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016); *Ogle v. Ohio Civil Service Employees Ass'n, AFSCME*, Local 11, 397 F.Supp.3d 1076, 1081-1082 (S.D. Ohio 2019). Defendant makes a facial attack on the Court's supplemental jurisdiction over Counts 4-9. (Doc. No. 15, PageID# 90.) Thus, the Court accepts the Plaintiffs' material allegations as true. *Gentek Bldg Prods., Inc.*, 491 F.3d at 330.

### B.      Fed. R. Civ. P. 12(b)(6)

First Transit also moves to dismiss Counts 5 through 8 of Plaintiffs' Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion

to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555-56, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-

6

technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

## III. Analysis

### A. Supplemental Jurisdiction Over Counts 4 through 9

The Court begins by noting that it has original jurisdiction over Plaintiffs' FLSA claim because it arises under federal law. *See* 28 U.S.C. 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.") To consider Plaintiffs' state-law claims, the Court must be able to exercise supplemental jurisdiction under 28 U.S.C. § 1367.

Section 1367(a) provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact" and "are such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). In the instant case, it is undisputed that Plaintiffs' state-law claims derive from a "common nucleus of operative fact" and, therefore, form "part of the same case or controversy" for purposes of § 1367(a).

However, a district court may nonetheless, in its discretion, decline supplemental jurisdiction over state-law claims even if jurisdiction would otherwise be proper under § 1367(a). Specifically, § 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over related state claims if:

(1) the claim raises a novel or complex issue of State law,

7

**(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,**

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis added).

"[D]istrict courts have broad discretion in deciding whether to exercise supplemental jurisdiction." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999) (internal quotation marks and citation omitted).  That "wide latitude" in determining whether to retain jurisdiction over state-law claims is not restricted to instances where all claims over which the district court has original jurisdiction are dismissed under § 1367(c)(3), but extends to cases in which state law "predominates" under § 1367(c)(2).  *See Ohio ex rel. Armstrong v. Stow-Munroe Falls CSD Bd. of Educ.*, 2013 WL 5406807 at * 2 (N.D. Ohio Sept. 25, 2013) (citing *Dashields v. Robertso*n, 2000 WL 564024 at *3 (4th Cir. May 10, 2000) (per curiam)).  In exercising its discretion, a district court can consider such factors as judicial economy, convenience, fairness and comity.  *Pinney*, 196 F.3d at 620.  "Although there appears to be no definitive test to determine whether state law [claims] predominate[ ] over federal claims, courts have considered such factors as whether they outnumber the federal law claims; whether the claims are distinct; and whether [the] state law claims involve proof that is not needed to establish the federal law claims." *Williamson v. Recovery Ltd. P'ship*, 2009 WL 649841, at *9 (S.D. Oh. March 11, 2009).  *See also Reed v. Pape Management Inc*., 2016 WL 5405248 at * 4 (N.D. Ohio Sept. 28, 2016).

Defendant argues that this Court should decline to exercise supplemental jurisdiction over, and dismiss without prejudice, Plaintiffs' California and New York state-law claims (i.e., Counts 4

through 9) on the grounds that those claims substantially predominate over Plaintiffs' single federal FLSA claim.  (Doc. No. 15, PageID# 88.)  Defendant argues that Plaintiffs' California state-law claims for minimum and overtime wage violations, recordkeeping violations, and unfair business practice violations (Counts 4 through 6), and New York state-law claims for minimum and overtime wage violations and recordkeeping violations (Counts 7 through 9) would "overwhelm" the instant matter because these claims involve different elements, different statutes of limitations, and require different proof than Plaintiffs' single FLSA claim.  (*Id.* at PageID# 94-96.)  Further, Defendant asserts that the existence of two ongoing class actions in federal district court in California, both of which involve overlapping wage and hour claims with the instant lawsuit, constitutes exceptional circumstances that militate in favor of declining to exercise supplemental jurisdiction.  (*Id.*)

Plaintiffs argue that the exercise of supplemental jurisdiction is appropriate in the instant case. (Doc. No. 18, PageID# 228.)  Plaintiffs liken the instant case to the Court's recent decision to exercise supplemental jurisdiction in *Stephenson v. Fam. Sols. of Ohio, Inc.*, No. 1:18-cv-2017, 2021 WL 1253459 (N.D. Ohio Apr. 5, 2021).  (*Id.*)  Plaintiffs assert that considerations of judicial economy, convenience, and fairness strongly support the exercise of supplemental jurisdiction over their California and New York state-law claims, because these claims "unquestionably involve the same facts, issues, discovery[,] and proof as their claims under the FLSA and Ohio law."  (*Id.*)

The Court finds that Plaintiffs' California and New York claims would substantially predominate over the FLSA claim and, therefore, will decline to exercise supplemental jurisdiction over Counts 4 through 9.  The Court concludes that there are subtle but important differences between Plaintiffs' California and New York state-law claims and their single FLSA overtime violation claim. These differences render Plaintiffs' California and New York claims distinct from their FLSA claim

because they would require significant additional discovery into the state-law claims not necessary for the FLSA claim, necessitate factual and legal analyses not applicable to the FLSA claim, and would also require Plaintiffs to demonstrate proof not necessary to establish an FLSA overtime violation. *See Williamson*, 2009 WL 649841, at *9.  In the Court's view, Plaintiffs underestimate the intricacies and "potential confusion these different state law schemes would cause." *In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig.*, 638 F. Supp. 2d 1290, 1301 (D. Colo. 2009) (concluding that the state-law claims substantially predominated over the FLSA claims because, among other reasons, "[t]he fact-finder will be required to decipher between the federal standard and up to three subtly different state law standards, and recall and work through the evidence presented" in the context of each state-law claim.).

For example, while New York law generally incorporates the FLSA'a definition of overtime (*i.e.*, nonexempt employees are entitled to overtime compensation for workweeks longer than 40 hours), California law does not. *Compare* 29 U.S.C. § 207(a)(1) and 12 NYLL § 142-2.2 *with* Cal. Lab. Code § 510(a).  Under California law, nonexempt employees must be paid overtime for any hours worked over eight per *workday and* over forty per *workweek*. Cal. Lab. Code § 510(a).  Thus, Plaintiff Posey's California overtime claim must be parsed out in greater detail and cannot be as straightforwardly analyzed as the New York, Ohio, and FLSA overtime claims.  While the discovery required for the overtime claims will involve similar sets of records, the evaluation of the California records will require an individualized analysis better performed by a California court.

The statutes of limitation also vary significantly between the FLSA, California, and New York claims.  For reasons discussed *infra*, the appropriate statute of limitations for Plaintiffs' FLSA claim is two years.  However, the statute of limitations on claims brought under California's Labor Code is

three years. Cal. Civ. P. § 338.  The statute of limitations on claims brought under New York's Labor Code is six years—*three times* as long as the statute of limitations applicable to Plaintiffs' FLSA claim.  12 NYLL § 663(3).  Exercising supplemental jurisdiction over the California and New York claims would require significant additional discovery into claims that fall well outside the FLSA's statute of limitations.

Further, the California and New York minimum wage claims alone would significantly predominate over Plaintiffs' single FLSA overtime claim.  As an initial matter, the Court notes that while Plaintiffs allege several facts related to their FLSA overtime claim, Plaintiffs allege no facts about any minimum wage violations.  (*See* Doc. No. 1, ¶¶ 10-27.)  Plaintiffs' allegations regarding any state-law minimum wage claims are barebones and conclusory.  (*See, e.g., id.* at ¶ 98, "During the relevant period, Defendant willfully violated the NYLL by paying New York Class members at hourly wage rates below the mandatory minimum wage rate applied in the locations they worked.")  Plaintiffs do not allege minimum wage violations under the FLSA.  (*See id.*, ¶¶ 43-55.)  Thus, Plaintiffs' California and New York minimum wage claims require separate discovery, analysis, and proof above and beyond what is required for Plaintiffs' single FLSA claim.  Moreover, Count 7, Plaintiff Bock's New York minimum wage claim is especially complicated because New York has three different, locality-based minimum wage schemes.  For example, three fixed-route drivers who lived in New York City, Westchester County, and Albany in 2018 were entitled to three entirely different minimum wages.  *See* 12 NYLL § 652(1).  Altogether, Count 7 implicates *fourteen* different applicable minimum wages spanning six years.  *Id.*  (*See also* Doc No. 1, ¶¶ 95-97.)  An analysis of Count 7's various applicable minimum wages would overwhelm the relatively straightforward task of evaluating Plaintiffs' single FLSA overtime claim, and divert the attention of the Court, attorneys,

11

and jury away from the federal claim and onto the state claims instead.  Such an analysis is a task better suited for a New York court.

Counts 4 through 9 thus present numerous, complex, and highly detailed issues of California and New York state law that would substantially predominate over the single FLSA overtime claim. It would not be convenient or fair to allow several complicated and intricate state-law claims to overwhelm a single, relatively straightforward, federal claim. *See Mathews v. ALC Partner, Inc.*, No. 4:08-cv-10636, 2009 WL 2390526, at *2 (E.D. Mich. July 31, 2009) (concluding that, "in this case the state claims are better tried in state court" because the plaintiffs' various state-law claims in their FLSA action "involve[d] differing legal standards and defenses," and would "transform the case from one requiring the application of one or two federal legal standards to a wide factual of factual situations, to one in which a dizzying array of state laws would also have to be applied to an equally dizzying number of discrete sets of evidence."); *In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig.*, 638 F. Supp. at 1301 (declining to exercise supplemental jurisdiction over state-law claims for, among other reasons, "the differences in terms of the scope of proof between the FLSA and the various state law schemes of Minnesota, Wisconsin, and Illinois"); *Glewwe v. Eastman Kodak Co.*, No. 05-cv-6462T, 2006 WL 1455476, at *4 (W.D.N.Y. May 25, 2006) (declining supplemental jurisdiction over several state-law claims because these claims would substantially predominate, and "[s]uch a diverse undertaking deserves the individualized analysis and attention that each state court would provide"); *Wong v. HSBC Mortg. Corp.*, No. C-07-2446 MMC, 2009 WL 151014, at *2 (N.D. Cal. Jan. 21, 2009) (conceding that while "a handful of district courts" have, in the course of adjudicating an FLSA claim, "found it appropriate to exercise supplemental jurisdiction over a state overtime claim," those cases involved the laws of a single state, not multiple states).

The Court also concludes that considerations of judicial economy weigh against exercising supplemental jurisdiction over Plaintiff Posey's California claims. Currently, another putative class action, *Cuellar v. First Transit, Inc.*, remains pending in California federal court and involves claims nearly identical to Plaintiff Posey's. *See Cuellar v. First Transit, Inc.*, 8:20-cv-01075-JWH-JDE (C.D. Cal.). In *Cuellar*, the proposed class includes all of Defendant's "current and former hourly drivers who worked for Defendant in California, during the four years before the filing of the Complaint through the time of class certification." *Cuellar*, 8:20-cv-01075-JWH-JDE, ECF Doc. No. 13, ¶ 26. Thus, the *Cuellar* class necessarily includes Plaintiff Posey's proposed California Class, of "fixed-route" bus drivers. (*See* Doc. No. 1, ¶ 35.) In *Cuellar*, the plaintiff brings claims against Defendant for failure to provide meal periods or compensation in lieu thereof, failure to pay minimum and overtime wages, and failure to provide itemized wage statements, which are identical to Plaintiff Posey's California claims against Defendant. (*Compare Cuellar*, 8:20-cv-01075-JWH-JDE, ECF Doc. No. 13, ¶¶ 29-31, 35-37, 41-43, *with* Doc. No. 1, ¶¶ 72-92.)

Defendant also asserts that the instant case overlaps with another pending putative class action in California federal court, *Azimihashemi v. First Transit, Inc.* (*See* Doc. No. 15, PageID# 97.) However, since Defendant filed its Motion, events have transpired in *Azimihashemi* so that it no longer overlaps with the instant case. In *Azimihashemi*, Defendant moved to dismiss on the grounds that the case was substantially similar to *Cuellar* or, alternatively, stay *Azimihashemi* pending resolution of *Cuellar*. *See Azimihashemi*, No. 8:21-cv-00780-JWH-JDEx, ECF Doc. No. 15. On July 26, 2021, Judge John W. Holcomb of the Central District of California, who is presiding over both *Cuellar* and *Azimihashemi*, conducted a hearing in *Azimihashemi*, in which "[c]ounsel for both parties and for Cuellar . . . opposed consolidating the two cases." *See Azimihashemi*, No. 8:21-cv-

00780-JWH-JDEx, ECF Doc. No. 27, PageID# 573.  On August 13, 2021, Judge Holcomb dismissed Azimihashemi's complaint, with leave to amend the complaint so that the complaint no longer overlapped with *Cuellar*.  *Id.*  Judge Holcomb concluded "that there is substantial overlap between *Cuellar* and the instant case [*Azimihashemi*]."  *Id.*  He noted that

> Litigating parallel issues on behalf of parallel plaintiffs in two cases before the same court is neither efficient nor fair. However, it is also unfair to dismiss the claims of over 1,000 putative class members of the instant case whom *Cuellar* does not cover— nor is it fair to dismiss permanently the claims of drivers who are not included in *Cuellar*.

*Id.* at PageID# 573-74.  Subsequently, Azimihashemi filed an amended complaint that does not appear to overlap with Plaintiff Posey's California claims.  *See Azimihashemi*, No. 8:21-cv-00780-JWH-JDEx, ECF Doc. No. 30.

Although the instant matter only overlaps with *Cuellar* and no longer overlaps with *Azimihashemi*, the Court finds Judge Holcomb's rationale for dismissing Azimihashemi's initial complaint to be instructive.  Like in *Azimihashemi*, there is substantial overlap between *Cuellar* and Plaintiff Posey's California claims.  The Court believes that it would be inefficient and unfair to litigate Plaintiff Posey's claims in a separate, yet parallel, proceeding in an Ohio federal court.  Given that Plaintiff Posey's claims completely overlap with *Cuellar*'s claims, the Court concludes that the factors of judicial economy and fairness weigh in favor of exercising discretion to decline supplemental jurisdiction over Plaintiff Posey's claims.  *See Musson Theatrical, Inc. v. Fed. Exp. Corp*, 89 F.3d 1244, 1254 (6th Cir. 1996).

Plaintiffs argue that this case is analogous to *Stephenson v. Fam. Sols. of Ohio, Inc.*  The Court disagrees.  In *Stephenson*, the Court considered the plaintiffs' motion for Rule 23 certification of a state-law class.  *Stephenson v. Fam. Sols. of Ohio, Inc.*, No. 1:18-cv-2017, 2021 WL 1253459, at *1

14

(N.D. Ohio Apr. 5, 2021), *appeal docketed* No. 21-3375 (6th Cir. 4/21/2021). The *Stephenson* plaintiffs sought to assert four state claims on behalf of their proposed Rule 23 class: "(1) violations of the Ohio Fair Minimum Wage Amendment ("OFMWA"), Ohio Constitution, art. II, § 34a; (2) violations of Ohio's overtime compensation statute, Ohio Rev. Code § 4111.03; (3) violations of the OFMWA's record-keeping requirement; and . . . [4] unjust enrichment."[1]  *Id.* at *6. In their opposition, the defendants argued that the Court should decline to exercise supplemental jurisdiction over the plaintiffs' four state-law claims because those claims substantially predominated over the federal FLSA claim. *Id.* at *9. The Court rejected the defendants' supplemental jurisdiction arguments and concluded that the plaintiffs' four Ohio law claims did not substantially predominate over their federal FLSA claim. *Id.* at *10. Rather, the Court concluded that two of the plaintiffs' four state-law claims (i.e., the plaintiffs' claims "for alleged violations of Ohio's minimum wage and overtime violations") were "similar to the FLSA claim in terms of their elements and the relevant facts and evidence." *Id.* With respect to the plaintiffs' unjust enrichment claim, the Court observed that, while it was not identical to the FLSA claim, it was "largely premised on the same evidence as the federal claim, i.e., evidence that Defendants failed to pay [putative class members] for travel time, no show appointments, and time spent entering documentation into patient records." *Id.* Moreover, the Court was not persuaded "that, under the circumstances presented, [the plaintiffs' Ohio record-keeping claim] is so distinct that it would necessarily predominate over the federal claim" and observed that, "to a certain extent," this claim drew "from the same body of evidence that has already been the subject of discovery with regard to Plaintiffs' federal claim." *Id.* The Court also rejected

---

[1] The *Stephenson* plaintiffs also initially sought to assert a breach of contract claim against the defendants, but the Court previously granted summary judgment in the defendants' favor with respect to the plaintiffs' breach of contract claim and thus denied the Rule 23 motion to the extent plaintiffs sought to include a class-action breach of contract claim. *Stephenson*, 2021 WL 1253459, at *7.

the defendants' argument that significant additional discovery would be necessary, as all discovery regarding liability was complete, and the only remaining discovery issue was whether, and to what degree, additional discovery would be necessary with respect to damages. *Id.* at *11.  Thus, the Court concluded that the plaintiffs' Rule 23 state-law claims did not substantially predominate over their FLSA claim, and "that considerations of judicial economy, convenience, and fairness weigh[ed] in favor of exercising supplemental jurisdiction over Plaintiffs' Rule 23 state law claims."  *Id.*

The instant case, however, is easily distinguishable from *Stephenson*.  First, the instant case's procedural posture is markedly different.  In *Stephenson*, the parties had completed discovery (other than the possibility of some additional discovery as to damages) and progressed past the dispositive motion stage.  *Id.* at *3-4.  It would have made little sense to decline to exercise supplemental jurisdiction over the *Stephenson* plaintiffs' state-law claims after three years of litigation and certainly would not have served the considerations of judicial economy, convenience, and fairness. Conversely, the instant case remains in its early stages.  Declining to exercise supplemental jurisdiction over Plaintiffs' California and New York claims at the pleading stage serves judicial economy and convenience because doing so prevents the Court and the parties from dedicating significant time and resources to addressing state-law claims that require separate discovery and analyses from Plaintiffs' single FLSA claim.

Second, there is far less overlap between Plaintiffs' California and New York claims and their FLSA claim than existed between the *Stephenson* plaintiffs' Ohio claims and their FLSA claim.  Two of the *Stephenson* plaintiffs' four state-law claims *directly* overlapped with their FLSA claim, and the other two state-law claims somewhat overlapped with their FLSA claim.  *Stephenson*, 2021 WL 1253459 at *10.  Here, there is less overlap between the Plaintiffs' FLSA claim and their California

16

and New York claims.  As discussed *supra*, there are significant differences between Plaintiffs' single FLSA overtime violation claim and their California and New York claims.  First, Plaintiffs assert California and New York minimum wage claims without any federal corollary.  Second, the Plaintiffs' California and New York overtime claims involve longer statutes of limitations which necessitates additional discovery separate and apart from the FLSA claim discovery.  Further, the California Labor Code establishes a different definition for "overtime" than the FLSA, which would require the factfinder to separately analyze the California overtime claim from the FLSA claim. Additionally, in *Stephenson*, the Court noted that the plaintiffs' Ohio state-law record-keeping claim "differ[ed] in some respects" from their FLSA claim, but nevertheless exercised supplemental jurisdiction because there was only a single state-law record-keeping claim and, importantly, because the discovery necessary to produce the evidence required to support such a record-keeping claim was already complete.  *Id.* at *10.  Plaintiffs' California and New York record-keeping claims indeed differ from their FLSA claim, as the FLSA has no analogous record-keeping requirement.  Moreover, no discovery has been conducted in this case, so the considerations of efficiency and convenience that weighed in favor of exercising supplemental jurisdiction over the single state-law record-keeping claim in *Stephenson* are not present here.

Third, in *Stephenson*, the Court only considered whether to exercise supplemental jurisdiction over Ohio state-law claims.  Here, however, the Court must decide whether to exercise supplemental jurisdiction over California and New York claims that would necessitate significant amounts of discovery and analysis separate from the FLSA claim.  The Court concludes that, given the differences between the California and New York claims and the FLSA claim, Plaintiffs' California and New York claims are more appropriately addressed by those states' courts rather than a federal

district court sitting in Ohio.[2]  *See In re Am. Fam. Mut. Ins. Co. Overtime Pay Litig.*, 638 F. Supp. 2d at 1301.  Thus, the Court concludes that *Stephenson* is distinguishable from the instant case.

Accordingly, the Court finds that Plaintiffs' California and New York state-law claims (i.e., Counts 4 through 9) substantially predominate over Plaintiffs' single FLSA claim for the purposes of 28 U.S.C. § 1367(c).  The Court finds that considerations of judicial economy, convenience, and fairness weigh against exercising supplemental jurisdiction over Plaintiffs' California and New York state-law claims.  Because the Court declines to exercise supplemental jurisdiction over Plaintiffs' California and New York claims (Counts 4 through 9), these claims are dismissed without prejudice. Therefore, the Court will not address Defendant's alternative arguments that Counts 5 through 9 should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**B.      Applicable Statutes of Limitations to Counts 1 through 3**

**1.      FLSA Statute of Limitations (Count 1)**

Defendant argues "[t]o the extent Plaintiffs intend to seek a three-year limitations period, they have failed to plead facts plausibly suggesting" any willful violations of the FLSA on Defendant's part.  (Doc. No. 15, PageID# 103.)  Therefore, Defendant asserts, the Court should dismiss Plaintiffs' claims of willfulness at this stage and limit their FLSA claim to the two-year limitations period prescribed in the statute.  (*Id.* at PageID# 104.)  Plaintiffs counter that they sufficiently plead allegations of willful violations on Defendant's part to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  (Doc. No. 18, PageID# 243.)

---

[2] Additionally, the Court is not persuaded by Plaintiffs' argument that the Court should exercise supplemental jurisdiction over the California and New York claims because Plaintiff Woods's Ohio claims implicate different legal issues from the plaintiffs' FLSA claim.  (*See* Doc. No. 18, PageID# 235.)  Plaintiff Woods's Ohio claim largely overlaps with Plaintiffs' FLSA claim.  *See Stephenson*, 2021 WL 1253459 at *10.  Moreover, a single Ohio record-keeping violation claim is unlikely to substantially predominate over the FLSA claim.  *Id.*  It is only when Plaintiffs attempt to add on separate California and New York claims that these state-law claims substantially predominate over the sole FLSA claim.

"An FLSA plaintiff generally has two years to file suit, but the statute of limitations increases to three years if the claim consists of a 'willful violation.'"  *Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 675 (6th Cir. 2012) (quoting 29 U.S.C. § 255(a)).  *See also, e.g., Goodwin v. Am. Marine Express*, No. 1:18-cv-01014, 2021 WL 848948, at *32 (N.D. Ohio Mar. 5, 2021).  "For an FLSA violation to be considered willful, a plaintiff must show 'that the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute.'"  *Scheck v. Maxim Healthcare Servs., Inc.*, 333 F. Supp. 3d 751, 758 (N.D. Ohio 2018) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988)).  *See also, e.g., Stout v. FedEx Ground Package Sys., Inc.*, No. 3:14-cv-02169, 2015 WL 7259795, at *4 (N.D. Ohio Nov. 17, 2015) (concluding that the plaintiffs' "allegations of willfulness are no more than legal conclusions").  "Noncompliance with the FLSA that is merely negligent, even if unreasonable, is not considered willful."  *Id.*  A "mere allegation that a defendant 'knew or had reason to know'" of the alleged FLSA violation is insufficient to allege a willful violation of the FLSA.  *Id.* (quoting *Hurd v. NDL, Inc.*, No. CIV. CCB-11-1944, 2012 WL 642425, at *6 (D. Md. Feb. 27, 2012)).  A plaintiff "still must plead facts about the defendant's mental state which, accepted as true, make the state-of-mind allegation plausible on its face."  *Katoula v. Detroit Entm't, LLC*, 557 F. App'x 496, 498 (6th Cir. 2014) (internal quotations omitted).

The Court concludes that Plaintiffs' FLSA claim is limited to the two-year period prior to the filing of their Complaint.  Plaintiffs' allegations of willfulness are legal conclusions and fail to set out any facts regarding Defendant's mental state.  For example, Plaintiffs allege—without any factual support—that Defendant knew it failed to pay its fixed-route drivers legally mandated wages "for work they performed with Defendant's knowledge and for its benefit." (Doc. No. 1, ¶ 1.)  Plaintiffs also allege that Defendant "intentionally" violated the FLSA by maintaining certain policies and

19

procedures "that knowingly deny its drivers overtime wage payments," but allege no facts that plausibly suggest any intent or knowledge on Defendant's part.  (*Id.* at ¶ 52.)  Plaintiffs further allege that, by requiring drivers to perform pre-/post-shift work, as well as to work through some or all of their uncompensated meal breaks, Defendant acted with "willful and reckless disregard" for Plaintiffs' rights under the FLSA.  (*Id.* at ¶ 54.)  Again, Plaintiffs fail to support this conclusory assertion that Defendant acted with "willful and reckless disregard" with any facts about the defendant's mental state.  Because the plaintiffs pleaded only conclusory assertions about Defendant's willfulness and "failed to plead any state-of-mind allegations that are plausible on their face, the Complaint's allegations of willfulness are insufficient to meet the *Iqbal/Twombly* pleading standard."  *Scheck*, 333 F. Supp. at 759.  Accordingly, Plaintiffs' FLSA claim is limited to a two-year period.

Plaintiffs' arguments that they sufficiently pled willfulness are not persuasive.  First, Plaintiff reasserts its allegations in its Opposition without any further explanation as to how their unsupported conclusions plausibly allege any facts regarding Defendant's mental state.  (Doc. No. 18, PageID# 242-43.) Second, in footnote 8, Plaintiffs assert that Defendant has an obligation to know when its employees are working and to pay wages when work is done.  (*Id.* at PageID# 243.)  This assertion is, as Defendant counters in its Reply, "axiomatic."  (Doc. No. 20, PageID# 254.)  Even if Defendant has an obligation to know when its employees are working and pay wages when work is done, Plaintiff must still allege enough facts to state a claim to relief that is plausible.  *Twombly*, 550 U.S. at 555-56.  Third, Plaintiffs' cited cases are easily distinguishable.  In *Rafferty v. Denny's, Inc.*, the defendant did not raise a statute of limitations argument in its motion to dismiss and so the court had no reason to address the sufficiency of the plaintiff's allegations of willfulness.  *Rafferty v. Denny's,*

*Inc.*,No. 5:18-cv-2409, 2019 WL 2924998 (N.D. Ohio July 8, 2019).  Neither *Perry v. Krieger Beard Servs., LLC*, No. 3:17-cv-161, 2018 WL 3218413 (S.D. Ohio July 2, 2018), nor *Malee v. Anthony & Frank Ditomaso, Inc.*, No. 16-cv-490, 2018 WL 1782853 (N.D. Ohio Apr. 13, 2018), involved motions to dismiss and, therefore, neither addresses the sufficiency of the plaintiffs' allegations of willful FLSA violations.

The Court concludes that Plaintiffs have not plausibly alleged willful violations of the FLSA. Accordingly, the statute of limitations governing Plaintiffs' FLSA claim is two years.

### 2.  OMFWSA Statute of Limitations (Counts 2 and 3)

Defendant argues that Plaintiff Woods's Ohio Class definition "appears to rely on a three-year statute of limitations," which is impermissible under Ohio law.  (Doc. No. 15, PageID# 104.) Defendant argues that because there is no willful violation exception under Ohio law, Plaintiff Woods's Ohio claims must be limited to a two-year period.  (*Id.*)  Plaintiffs do not address this argument in their Opposition.

"Under Ohio's overtime pay statute, O.R.C. 4111.01, the statute of limitations is two years, with no exception for willful violations."  *Terry v. Pro-Mark Contracting, LLC*, No. 1:14 CV 2542, 2016 WL 3421399, at *5 (N.D. Ohio Jun. 22, 2016) (citing Ohio Rev. C. § 2305.11; *State ex rel. Gingrich v. Fairfield City Schools*, 18 Ohio St. 3d 244 (1985)).  *See also Malee v. Anthony & Frank Ditomaso, Inc.*, No.1:16-cv-490, 2018 WL 2938970, at *1 ("Ohio's Minimum Wage Act has a two year limitation period. That limitation period does not increase to three years for willful conduct unlike the FLSA.").

Ohio Rev. C. § 2305.11 sets forth, in relevant part:

An action . . . by an employee for the payment of unpaid minimum wages, unpaid overtime compensation, or liquidated damages by reason of the nonpayment of

minimum wages or overtime compensation shall be commenced within two years after the cause of action accrued.

The Court agrees that Plaintiff Woods's claims that Defendant violated the OMWFSA in Counts Two and Three are subject to the OMWFSA's two-year limitation period.  The statute of limitations on such claims is two years, with no exceptions for willful violations.  *Malee*, 2018 WL 2938970, at *1.  Accordingly, Plaintiff Woods's Ohio claims are limited to a two-year statute of limitations.

IV.     **Conclusion**

Accordingly, for the reasons set forth above, Defendant's Partial Motion to Dismiss is GRANTED.

**IT IS SO ORDERED.**

        *s/Pamela A. Barker*
        PAMELA A. BARKER
Date:  October 7, 2021        U. S. DISTRICT JUDGE