# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JAMES WOODS and VINCENT BOCK, for themselves and all others similarly situated, | ) |
| Plaintiffs, | ) Case No. 21-cv-739 |
| v. | ) JUDGE BARKER |
| FIRST TRANSIT, INC., | ) JURY TRIAL DEMANDED |
| Defendant. | ) |

**Deleted: , MIA POSEY**

**Deleted: ¶**
**¶**
**¶**

**Deleted: ¶**
**)**

## FIRST AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

James Woods and Vincent Bock ("Plaintiffs") hereby make the following allegations

**Deleted: , Mia Posey**

against First Transit, Inc. ("Defendant") concerning their acts and status upon actual knowledge

and concerning all other matters upon information, belief and the investigation of their counsel:

### NATURE OF THE ACTION

1.  Defendant's business includes providing public transportation services. Plaintiffs,

former fixed-route bus drivers, bring this action for violations of the Fair Labor Standards Act of

1938, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and the Ohio Minimum Wage Fair Standards Act

**Deleted: state laws of**
**Deleted: , California, and New York,**

("OMWFSA), challenging common scheduling, timekeeping and compensation policies and

practices that failed to provide Defendant's fixed-route bus drivers legally-mandated wages due for

work they performed with Defendant's actual or constructive knowledge, and for its benefit.

### JURISDICTION AND VENUE

2.  This Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 29 U.S.C.

§216(b) and 28 U.S.C. §§ 1331.

3.  This Court has supplemental jurisdiction over Plaintiffs Woods' claims for violation

**Deleted: Plaintiffs'**

of Ohio law pursuant to 28 U.S.C. § 1367.

**Deleted: , California, and New York state-**
**Deleted:  claims**

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## **THE PARTIES**

5.     Plaintiff James Woods is an adult citizen of Ohio who resides in Lorain County. Mr. Woods worked as a full-time, hourly First Transit fixed-route bus driver in Lorain Co., Ohio from October 2018 to April 2019 and is personally familiar with, and has been personally affected by, the policies and practices described in this Complaint.  Mr. Woods has signed and filed a Consent Form to join this litigation.  *See* Consent Form [Doc. 1-1]

6.     Plaintiff Vincent Bock is an adult citizen of New York who resides in Allegany County.  Mr. Bock worked as a full-time, hourly First Transit fixed-route bus driver in Cuba, N.Y. and Wellsville N.Y. from early 2016 to February 2020 and is personally familiar with, and has been personally affected by, the policies and practices described in this Complaint.  Mr. Bock has signed and filed a Consent Form to join this litigation.  *See* Consent Form [Doc. 1-3].

7.     Defendant First Transit, Inc. ("First Transit") is a Florida foreign for-profit corporation based in Cincinnati, Ohio.  *See http://www.firstgroupplc.com/about-firstgroup/first-transit.aspx* (accessed Feb. 16, 2021); *https://www.corporationwiki.com/Ohio/Cincinnati/first-transit-inc-3603701.aspx* (accessed Feb. 16, 2021).  "First Transit is one of the largest private sector providers of public transit management and contracting in North America," employing 19,500 people and providing fixed-route bus services, paratransit services, shuttle bus services, and vehicle maintenance services from 300 locations in 39 states.  *See https://www.firstgroup plc.com/~/media/Files/F/Firstgroup-Plc/signpost-documents/2019-factsheets/first-transit-2019-lr-final.pdf* (accessed Feb. 16, 2021).

### **RELEVANT FACTS**

8.     Throughout the relevant period, Defendant has owned and exercised operational control over all significant business functions relating to its fixed-route bus drivers, including: setting and implementing the scheduling, timekeeping and compensation policies and practices

2

**Deleted:** Woods

**Deleted:** (Exhibit A).

**Deleted:** <#>Plaintiff Mia Posey is an adult citizen of California who resides in Alameda County.  Ms. Posey worked as a full-time, hourly First Transit fixed-route bus driver in California from June 2018 to July 2019 and is personally familiar with, and has been personally affected by, the policies and practices described in this Complaint.  Ms. Posey has signed and filed a Consent Form to join this litigation.  *See* Posey Consent Form (Exhibit B).¶

**Deleted:** <#>Bock

**Deleted:** <#>(Exhibit C).

Moved (insertion) [1]

**Deleted:** :

governing their work; providing them with training on these policies and practices; scheduling their work; tracking their work time; and setting, calculating, and paying their wages.

9.     Defendant's fixed-route bus drivers typically provide public transportation services that include operating 15- to 60-passenger vehicles along a fixed-route, picking up and dropping off passengers at designated stops at designated times, collecting fares, cleaning and maintaining their vehicles, completing paperwork and performing related work.

10.     Defendant maintains common scheduling, timekeeping and compensation policies and practices for its fixed-route bus drivers nationwide.

11.     Throughout the relevant period, Defendant had an affirmative legal duty to exercise control over its business operations, including:

   a.     when drivers were told to arrive at work, when drivers were put on-the-clock for payroll purposes, whether drivers were suffered or permitted to perform any off-the-clock pre-shift work and whether all legally-required wages were paid for this work;

   b.     when drivers were taken off-the-clock for payroll purposes, when drivers were allowed to leave work, whether drivers were suffered or permitted to perform any off-the-clock post-shift work and whether all legally-required wages were paid for this work; and

   c.     whether a meal break deduction was automatically taken from drivers' daily time, whether drivers had an opportunity to report meal break work or claim meal break wages, whether drivers were suffered or permitted to perform any off-the-clock meal break work and whether all legally-required wages were paid for this work.

12.     Throughout the relevant period, Defendant had an affirmative legal duty to pay wages at the correct hourly rate for all work it knew, or should have known, its employees were permitted to perform.

**<u>Knowing</u> Failure to Pay for Pre-Shift Work**

13.      Each day, Defendant assigns its fixed-route bus drivers a shift start-time (*i.e.,* 4:15 a.m.), which represents the time Defendant expects them to drive their assigned bus out of their assigned depot and begin their route.

14.      To <u>ensure they</u> begin their route on time, <u>Defendant requires its</u> fixed-route bus drivers <u>to</u> arrive at work 20–30 minutes before their scheduled shift start-time to perform work-related activities that include: walking from the depot parking lot to the dispatch office to receive their vehicle assignment, manifest and keys; walking back from the dispatch office to the parking lot to find their assigned vehicle; and <u>completing</u> a pre-trip inspection (*e.g.,* checking the exterior and interior of the vehicle for damage, checking the fuel level <u>and</u> cleaning the vehicle).

15.      After completing their pre-shift routine, Defendant's fixed-route bus drivers start their vehicle and drive it out of the depot, at which <u>point</u> Defendant begins tracking their time for payroll purposes.

16.      <u>Defendant, through its managers, has actual or constructive knowledge that fixed-route bus drivers perform 20–30 minutes of daily, off-the-clock, pre-shift work without pay because, among other things: managers: set drivers' work schedules, including their shift start-times; managers know that drivers are not put on-the-clock for payroll purposes until they drive their vehicles out of the depot to start their route; managers instruct drivers to arrive at work 20–30 minutes before their scheduled shift start-time to complete required pre-trip work; managers interact with drivers to provide their vehicle assignments, manifests and keys before drivers are put on-the-clock for payroll purposes; managers interact with drivers to address any issues that arise during pre-trip inspections before drivers are put on-the-clock for payroll purposes; managers review records of daily pre-trip inspections that drivers complete before they are put on-the-clock for payroll purposes; managers receive regular complaints from drivers about having to start work</u>

4

| | Deleted: Defendant's |
| | Deleted: must |
| | Deleted:  about |
| | Deleted: performing |
| | Deleted: , |
| | Deleted: time |

before their scheduled shift and not being paid for all hours worked, including unpaid pre-shift work; managers review drivers' time records each pay period and approve them to be paid from their scheduled shift start-times rather than from the time they arrived at the depot, or actually began working; and managers know that, for all these reasons, drivers cannot arrive to work at their scheduled shift-start time and complete all of the work necessary to pull their vehicles out of the depot on time.

17. Defendant, through its managers, intended to injure its fixed-route bus drivers by knowingly failing to accurately record their actual work start-time each day; knowingly failing to create a contemporaneous record of their actual work time; and knowingly depriving them of legally-required overtime wages that would have been owed for the pre-shift work they suffered, permitted and required drivers to perform.

18. By knowingly allowing its fixed-route bus drivers to perform 20–30 minutes of unpaid pre-shift work each day, Defendant willfully deprived these employees of approximately 1.67 to 2.5 hours of overtime pay each week.

**Knowing Failure to Pay for Post-Shift Work**

19. Each day, when Defendant's fixed-route bus drivers drive their vehicle back into their assigned depot at the end of their shift (*i.e.,* 12:45 p.m.), Defendant stops tracking their time for payroll purposes.

20. After Defendant takes its fixed-route bus drivers off-the-clock, it requires them to perform work-related activities that take approximately 30-45 minutes, including: waiting in line to re-fuel their vehicle, re-fueling their vehicle, parking their vehicle, performing a post-trip inspection (*e.g.,* checking the exterior and interior of the vehicle for damage, cleaning the vehicle), completing their required paperwork, walking from the depot parking lot to the dispatch office, waiting in line to turn-in their keys and paperwork and turning-in their keys and paperwork.

5

**Deleted:** -related tasks before going on-the-clock

**Deleted:** avoids paying them for

**Deleted:** work hours

**Deleted:** <#>Defendant could avoid these pre-shift timekeeping errors by (1) requiring its fixed-route bus drivers to clock-in upon arriving at the depot or (2) requiring dispatchers to record the time that Defendant's fixed-route bus drivers arrive at the dispatch office as their shift start time for payroll purposes. ¶

**Deleted:** When

**Deleted:** ,

**Deleted:** returning to their depot, Defendant's

**Deleted:** must spend 30-45 minutes on

**Deleted:** include

**Deleted:** all

21.     After completing their post-shift activities, all of which occur off-the-clock for payroll purposes, Defendant's fixed-route bus drivers are allowed to leave work.

22.     Defendant, through its managers, has actual or constructive knowledge that fixed-route bus drivers perform 30–45 minutes of daily, off-the-clock, post-shift work without pay because, among other things: managers set drivers' work schedules, including their shift end-times; managers know that drivers are taken off-the-clock for payroll purposes when they drive their vehicles into the depot to end their route; managers instruct drivers to complete all of their required post-trip work after returning to the depot; managers interact with drivers to collect their completed paperwork, fares and vehicle keys after drivers are taken off-the-clock for payroll purposes; managers interact with drivers to address any issues that arise during post-trip inspections after drivers have been taken off-the-clock for payroll purposes; managers review records of daily post-trip inspections that drivers complete after they are taken off-the-clock for payroll purposes; managers receive regular complaints from drivers about having to keep working past their scheduled shift and not being paid for all hours worked, including unpaid post-shift work; managers review drivers' time records each pay period and approve them to be paid based to their scheduled shift end-times rather than to the time they actually finished their work or left the depot; and managers know that, for all these reasons, drivers cannot complete all of their required post-shift work by the time they are scheduled to end their route by returning their vehicles to the depot.

23.     Defendant, through its managers, knowingly intended to injure its fixed-route bus drivers by failing to accurately record their actual work start-time each day; knowingly failing to create a contemporaneous record of their actual work time; and knowingly depriving them of legally-required overtime wages that would have been owed for the post-shift work they suffered, permitted and required drivers to perform.

24.     By knowingly allowing its fixed-route bus drivers to perform 30–45 minutes of

6

**Deleted:** Only after

**Deleted:** routine are

**Deleted:** and go home

**Deleted:** <#>By requiring its fixed-route bus drivers to perform 30–45 minutes of work-related tasks after going off-the-clock each day, Defendant avoids paying them for another approximately 2.5 to 3.75 overtime work hours each week. ¶
Defendant could avoid these post-shift timekeeping errors by (1) requiring its fixed-route bus drivers to clock-out as they leave the depot or (2) requiring Dispatchers to record the time Defendant's fixed-route bus drivers leave the dispatch office to go home as their shift end time for payroll purposes. ¶

unpaid post-shift work each day, Defendant willfully deprived these employees of approximately 2.5 to 3.75 overtime hours each week.

### Knowing Failure to Pay for Meal Break Work

25.     Each day, Defendant promises its fixed-route bus drivers an unpaid 30-minute meal break and automatically deducts 30 minutes from their work time without any consideration for whether they actually receive an uninterrupted 30-minute meal break.

26.     Most of Defendant's fixed-route bus drivers are scheduled to take their meal breaks at a specific time (i.e., from 8:15 a.m. to 8:45 a.m.).  However, approximately two times per week, because of delays related to traffic, riders, or other causes, these drivers wind up starting their scheduled meal breaks after the assigned start-time and, since they are required to resume their route at their scheduled end-time, typically receive less than a fifteen-minute meal break.

27.     Some of Defendant's fixed-route bus drivers do not have a scheduled meal break time and, instead, are told to take a meal break when possible.  However, because of the demands of their schedules and routes, these drivers rarely receive any meal break at all, much less an uninterrupted 30-minute meal break.

28.     Defendant does not maintain any system or procedure allowing drivers to report a missed or interrupted meal break, seek reversal of the automatic meal break deduction, or claim wages for their meal break work.

29.     Defendant, through its managers, has actual or constructive knowledge that fixed-route bus drivers perform regular, off-the-clock, meal break work without pay because, among other things: managers: set drivers' work schedules, including their meal break times; managers know that drivers' have 30 minutes automatically deducted from their daily hours worked each day, representing their unpaid meal break; managers communicate with drivers on a daily basis about delays associated with traffic, riders, or other things that cause their meal breaks to be

7

**Deleted:** each day

**Deleted:** giving

**Deleted:** to

**Deleted:** a full

**Deleted:** Many

**Deleted:** break

**Deleted:** of day

**Deleted:** 58

**Deleted:** 9:28

**Deleted:** Drivers who are assigned a specific time-frame for their meal break must take their meal break during that time and may not continue their meal break past the scheduled end-time if, for whatever reason, they cannot begin their meal break on time.  Approximately twice each week,

**Deleted:** Defendant's fixed-route bus

**Deleted:** cannot begin

**Deleted:** break on

**Deleted:** and

**Deleted:** no more

**Deleted:** are

**Deleted:** assigned

**Deleted:** specific

**Deleted:** -frame for their meal break

**Deleted:** their

**Deleted:** they can.  Because

**Deleted:** Defendant's fixed-route bus

**Deleted:** who are not assigned a specific time-frame for their meal …

**Deleted:** during their shift

**Deleted:** a full

**Deleted:** minutes free from work

**Deleted:** for its fixed-route bus

**Deleted:** shortened or

**Deleted:** or request

**Deleted:**  As a result,

**Deleted:**  does not

interrupted; managers receive regular complaints from drivers about meal breaks being missed or interrupted because of delays associated with traffic, riders, or other things; managers receive regular complaints from drivers about not being paid for their meal break work; managers do not maintain any system or procedure that allows drivers to report meal break work or request pay for missed or interrupted meal breaks; managers review drivers' time records each pay period and routinely approve meal break time deductions to be taken without regard for whether drivers actually received an uninterrupted, 30-minute meal break.

30.     Defendant, through its managers, intended to injure its fixed-route bus drivers by knowingly failing to provide them with an uninterrupted, 30-minute meal break each day; knowingly failing to allow drivers to take a full, 30-minute meal break regardless of when they began their meal break; knowingly failing to create an accurate, contemporaneous record of drivers' meal break work; and knowingly failing to provide drivers with a system or procedure to report meal break work or request pay for missed or interrupted meal breaks.

31.     By knowingly allowing its fixed-route bus drivers to experience missed or interrupted meal breaks without pay between two and five times per week, Defendant willfully deprived these employees of approximately 1.0 to 2.5 hours of overtime pay each week.

**COLLECTIVE AND CLASS ACTION ALLEGATIONS**

**FLSA Collective Action Allegations**

32.     Plaintiffs bring their FLSA collective claim on an opt-in, collective basis pursuant to 29 U.S.C. § 216(b) for all people who have worked as a fixed-route bus driver for Defendant in any location nationwide during the maximum limitations period (the "FLSA collective"). Plaintiffs reserve the right to amend this definition as necessary.

33.     Plaintiffs belong to the FLSA Collective because they worked as fixed-route bus drivers for Defendant during the relevant period.

8

**Deleted:** for any of their shortened or missed meal breaks.

**Deleted:** shortened and

**Deleted:** avoids paying them for between one and two-and-a-half

**Deleted:** work hours

**Deleted:**

**Deleted:** <#>Defendant could avoid this meal break timekeeping error by (1) scheduling or otherwise providing for its fixed-route bus drivers to have a 30-minute meal break free from work each day; (2) allowing its fixed-route bus drivers to take a full 30 minutes off beginning from the time they start their meal break each day; and (3) providing them with a procedure to report shortened or missed meal breaks and request reversal of the automatic meal break deduction. ¶

34.     The FLSA Collective is "similarly situated," as defined by 29 U.S.C. § 216(b), because its members performed similar jobs under similar scheduling, timekeeping and compensation policies and practices.

35.     Plaintiffs and the FLSA Collective members do not meet any test for exemption under the FLSA.

36.     Based on publicly-available information on Defendant's website, Plaintiffs reasonably believe the FLSA Collective may include several thousand members.  *See* *https://www.firstgroupplc.com/~/media/Files/F/Firstgroup-Plc/signpost-documents/2019-fact* *sheets/first-transit-2019-lr-final.pdf* (accessed Feb. 16, 2021).

37.     Defendant's timekeeping, payroll and personnel records, among other documents, will confirm the total number of people who qualify to participate in the FLSA Collective.

**Rule 23 Class Action Allegations**

38.     Plaintiff Woods brings additional claims under Fed. R. Civ. P. 23 for violations of Ohio law for all people who have worked as a fixed-route bus driver for Defendant in Ohio since April 5, 6, 2019 (the "Ohio Class").

39.     5.5 Class treatment of Plaintiffs' OMWFSA claims is appropriate because the Ohio Class satisfies the requirements of Fed. R. Civ. P. 23.

40.     The Ohio Class is so numerous that joinder of its individual members would be impracticable.  During the relevant period, hundreds of people have worked as fixed-route bus drivers for Defendant in Ohio.

41.     Plaintiff Woods' claims are typical of the claims belonging to the members of the Ohio Class, and does not have any interest that are antagonistic to, or in conflict with, the interests of the members of the Ohio Class.

42.     Many legal and factual questions are common to the claims of the Ohio Class

9

because this action concerns the legality of Defendant's nationwide policies and practices.  The legality of these policies and practices will be determined by applying generally applicable legal principles to common evidence.

43.     Plaintiff Woods will fairly and adequately represent the interests of the Ohio Class members and has retained competent and experienced counsel for this purpose.

44.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting individual Ohio Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of these claims.

**COUNT I**
**VIOLATION OF THE FLSA**
**Unpaid Overtime Wages**
**(By All Plaintiffs for the FLSA Collective)**

45.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

46.     Defendant is an "employer" as defined by 29 U.S.C. § 203(d).

47.     Plaintiffs and the FLSA Collective members are "employees" as defined by 29 U.S.C. § 203(e)(1).

48.     The wages Defendant pays to Plaintiffs and the FLSA Collective members are "wages" as defined by 29 U.S.C. § 203(m).

49.     Defendant is an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

50.     Plaintiffs and the FLSA Collective members are similarly situated individuals within the meaning of 29 U.S.C. § 216(b).

51.     According to 29 U.S.C. § 216(b), private plaintiffs may bring collective actions to

10

---

**Deleted:** Plaintiffs

**Deleted:** , California, and New York

**Deleted:** have

**Deleted:** , California, and New York

enforce employers' failure to comply with the FLSA's requirements.

52.     Throughout the relevant period, Defendant has been obligated to comply with the FLSA's requirements, Plaintiffs and the FLSA Collective members have been covered employees entitled to the FLSA's protections, and Plaintiffs and the FLSA Collective members have not been exempt from receiving wages required by the FLSA for any reason.

53.     According to 29 U.S.C. § 207(a)(1), employers must pay their employees an overtime rate equal to at least 1½ times their regular rate of pay for all hours worked in excess of 40 hours per week.

54.     Defendant has intentionally violated the FLSA by knowingly maintaining common scheduling, timekeeping, and compensation policies and practices that do not cause its drivers to receive overtime wages for overtime pre-shift, post-shift, and meal break work that Defendant requires them to perform as part of their job and for Defendant's benefit.

55.     Plaintiffs and the FLSA Collective have been harmed as a direct and proximate result of Defendant's unlawful conduct because Defendant has deprived them of wages owed for overtime pre-shift, post-shift, and meal break work they performed for Defendant's benefit.

56.     By knowingly denying its drivers overtime wages owed for work they were knowingly required or allowed to perform, Defendant has acted with willful and reckless disregard for Plaintiffs' and the FLSA Collective members' rights under the FLSA.

57.     Defendant has no good faith justification or defense for its conduct or for failing to pay Plaintiffs and the FLSA Collective members all wages required by the FLSA.

**COUNT II**
**VIOLATION OF OHIO LAW**
**Unpaid Straight-Time and Overtime Wages**
**(By Plaintiff Woods for the Ohio Class)**

11

**Deleted:** knowingly deny

**Deleted:** wage payments

**Deleted:** By failing to properly pay its drivers

58.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

59.     Defendant is an "employer" as defined in Section 34a of Article II, Ohio Constitution.

60.     The wages Defendant pays to the Ohio Class members are "wages" as defined by the OMWFSA, O.R.C. § 4111.01(A).

61.     While performing work for Defendant, Ohio Class members have been engaged in an "occupation" within the meaning of the OMWFSA, O.R.C. § 4111.02.

62.     The OMWFSA, at O.R.C. § 4111.02, requires employers to "pay each of the employer's employees at a wage rate of not less than the wage rate specified in Section 34a of Article II, Ohio Constitution."

63.     The state minimum wage rate for Ohio has been set as follows:

| Effective Date | Minimum Wage |
| --- | --- |
| January 1, 2021 | $8.80 |
| January 1, 2019 | $8.55 |
| January 1, 2018 | $8.30 |

64.     The OMWFSA, at O.R.C. § 4111.03(A), requires employers to pay their employees an overtime rate equal to at least 1½ times their regular rate of pay for all hours worked in excess of 40 hours in one workweek.

65.     Throughout the relevant period, Defendant has been obligated to comply with the OMWFSA's requirements, Ohio class members have been covered employees entitled to the OMWFSA's protections, and Ohio class members have not been exempt from receiving wages required by the OMWFSA.

66.     Defendant intentionally violated Ohio law by knowingly maintaining common

12

Deleted: ¶

scheduling, timekeeping, and compensation policies and practices that do not track its fixed-route bus drivers' actual pre-shift, post-shift and meal-break work or pay required wages for this work.

67.    By engaging in this conduct, Defendant has acted with willful and reckless disregard for Ohio class members' rights under Ohio law.

68.    Defendant has no good-faith justification or defense for its conduct or for failing to pay the Ohio Class members' all wages required by Ohio law.

69.    Ohio Class members have been harmed as a direct and proximate result of Defendant's unlawful conduct because they have been deprived of legally required wages owed for pre-shift, post-shift and meal-break work they performed from which Defendant derived a direct and substantial benefit.

**COUNT III**
**VIOLATION OF OHIO LAW**
**Recordkeeping Violation**
**(By Plaintiff Woods for the Ohio Class)**

70.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

71.    The OMWFSA, at O.R.C. § 4111.00, provides that each employer:

> shall make and keep for a period of not less than three years a record of the name, address, and occupation of each of the employer's employees, the rate of pay and the amount paid each pay period to each employee, the hours worked each day and each work week by the employee, and other information as the director of commerce prescribes by rule as necessary or appropriate for the enforcement of section 4111.03 of the Revised Code, or of the rules thereunder.

72.    Defendant has intentionally violated the OMWFSA by knowingly failing to prepare and maintain an accurate record of Ohio class members' pre-shift, post-shift and meal-break work time and for the fact that it paid no wages for this work.

73.    Defendant has no good faith justification or defense for failing to maintain

13

employment records required by Ohio law.

WHEREFORE, Plaintiffs respectfully pray for an order:

a. Certifying this matter to proceed as a collective action with respect to Count I;

b. Certifying this matter to proceed as a class action with respect to Counts II-III;

c. Finding that Defendant willfully violated the applicable provisions of the FLSA by failing to pay all required overtime wages to the FLSA Collective members;

d. Finding that Defendant willfully violated the applicable provisions of Ohio law by failing to pay all required wages owed to the Ohio Class members and engaging in related record keeping violations;

e. Granting judgment in favor of Plaintiffs and the FLSA Collective members against Defendant on Count I;

f. Granting judgment in favor of Plaintiff Woods and the Ohio Class members against Defendant on Counts II and III;

g. Awarding all available compensatory damages in amounts to be determined;

h. Awarding pre-judgment interest on all compensatory damages due;

i. Awarding all available civil penalties and/or restitution in amounts to be determined;

j. Awarding all available liquidated and/or punitive damages in amounts to be determined;

k. Awarding a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

l. Awarding equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

m. Appointing the undersigned counsel as class counsel;

n. Awarding any further relief the Court deems just, necessary, and proper; and

o. Maintaining jurisdiction over this action to ensure Defendant's compliance with the foregoing.

14

**Deleted:** COUNT IV¶
**VIOLATION OF CALIFORNIA LAW**¶
**Failure to Provide Minimum and Overtime Wages**¶
**(By Plaintiff Posey for the California Class)**¶
¶
Each of the preceding paragraphs is incorporated by reference as though fully set forth herein. ¶
California Labor Code § 1197 sets the minimum wage to be paid to employees as follows: ¶
The minimum wage for employees fixed by the commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful. This section does not change the applicability of local minimum wage laws to any entity.¶
¶
The California Industrial Welfare Commission has set the minimum hourly wage for non-exempt workers at companies with 26 or more employees, as follows:¶
**Effective Date**

**Deleted:** IX

**Deleted:** , California, and New York

**Deleted:** , California, and New York

**Deleted:** and notice

**Deleted:** through

**Deleted:** <#>Granting judgment in favor of Plaintiff Posey and the California Class members against Defendant on Counts IV and VI;¶
Granting judgment in favor of Plaintiff Bock and the New York Class members against Defendant on Counts VII through IX;¶

**Deleted:** lead

**JURY DEMAND**

Plaintiffs demand a jury trial as to all claims so triable.

Respectfully Submitted,

Dated: October 19, 2021

*/s/ Daniel R. Karon*
Daniel R. Karon (#0069394)
Beau D. Hollowell (#0080704)
**KARON LLC**
700 West St. Clair Avenue, Suite 200
Cleveland, OH  44113
(216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

David J. Cohen (admitted *pro hac vice*)
**STEPHAN ZOURAS LLP**
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836
dcohen@stephanzouras.com

James B. Zouras (admitted *pro hac vice*)
Teresa M. Becvar (admitted *pro hac vice*)
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, IL  60606
(312) 233-1550
jzouras@stephanzouras.com
tbecvar@stephanzouras.com

*Attorneys for Plaintiffs, the Putative
FLSA Collective and the Putative State
Law Class*

**Deleted:** April 5, 2021

**Deleted:**  forthcoming

**Deleted:**  forthcoming

**Deleted:** *Classes*

15