IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JAMES WOODS**, *et al.*, <br> Plaintiffs, <br> v. <br><br> **FIRST TRANSIT, INC.**, <br> Defendant. | ) ) ) ) ) ) ) ) ) | Case No. 21-cv-739 <br><br> Judge Charles Esque Fleming |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF AN ORDER ALLOWING FLSA NOTICE**

James Woods, Vincent Bock, Penelope Branison, Betty Erwin, and Kenneth Ford ("Plaintiffs") respectfully submit the following Supplemental Memorandum in support of their request for an order allowing FLSA notice and addressing the Sixth Circuit's recent decision in *Clark v. A&L Homecare & Training Ctr., LLC,* 68 F.4th 1003 (6th Cir. 2023).

In filings it has made in other cases, Defendant paints *Clark* as a "watershed opinion" that "upends [FLSA claims'] analytical underpinnings." Piercing this hyperbole, *Clark* does one thing: change the standard for issuing FLSA notice from a "modest" showing to a "strong likelihood" showing. *Clark,* 68 F.4th at 1011. While this change might prevent notice from issuing in a flimsily constructed case, it should have no practical effect in a case (like this one) built on extensive evidence, including the defendants' common, nationwide policies and procedures and similar sworn testimony from multiple knowledgeable plaintiffs with extensive work experience across multiple locations and states. As discussed below, the "strong likelihood" standard simply requires a plaintiff to plead facts showing his claims and the collective members' claims are similar. Plaintiffs' pleadings in this case meet the standard announced in *Clark*, so they respectfully submit this Court should grant their Motion.

1

## I. PROCEDURAL HISTORY

On June 29, 2022, Plaintiffs filed a Motion for FLSA conditional certification, seeking leave to disseminate notice to a putative Collective defined to include: "all people who have worked as a full-time employee of First Transit and drove a fixed-route bus in any week during the last three years." Notice Memo, p.1 [Doc. 53-2].[1] In support of their Motion, Plaintiffs introduced Defendant's Fixed Route Operator job description, nationwide Employee Handbook, and E-Time User Guide as well as sworn declarations describing their personal experiences, across more than 32 years of employment with First Transit in five different states (Arizona, California, Maryland, New York and Ohio), their familiarity with Defendant's policies and practices, their interactions with managers responsible for implementing Defendant's hours of work, meal break, overtime, time reporting, and payroll policies, and their discussions with putative Collective members who claimed the same problems with unpaid pre-shift, meal break and post-shift work. [Docs. 53-4 to 53-11].

On July 28, 2022, Defendant opposed Plaintiffs' Motion principally claiming that each of its locations is "unique" and all its policies are "lawful," challenging Plaintiffs' credibility, and suggesting the putative Collective members do not share claims supported by common evidence. Def. Mem. [Doc. 57].[2]

---

[1] Defendant estimated that, in 2022, it employed 3,365 full-time Fixed-Route Drivers in 71 locations, not including former Drivers or full-time employees with other job titles who also drive fixed-route busses. *See* Jan. 26, 2022 Frondorf Letter, pp. 7-8 (71 locations); Feb. 14, 2022 Frondorf Letter, pp. 6-8 (3,365 Drivers) [Doc. 53-3].

[2] Defendant's Opposition heavily relies on declarations from nine of its current managers. Opposition at pp. 5-13 [Doc. 57], *citing* Declarations [Docs. 57-3 to 57-11]. Aside from these declarants' obvious potential bias, Defendant only identified two of these managers (Donnarumma and Dillingham) before filing its Opposition, meaning that Plaintiffs had no notice of the other seven employees, or any reason or opportunity to test the information they provided. For all these reasons, Ohio district courts routinely disregard declarations from defendants' current employees at this litigation stage. *See Kleinhans v. Greater Cincinnati Behavioral Health Services*, 2021 WL 5048399, \*6 (S.D. Ohio Nov. 1, 2021), *R&R adopted*, 2022 WL 682664 (S.D. Ohio Mar. 8, 2022)

On August 18, 2022, Plaintiffs filed a Reply in support of their Motion. [Doc. 59]. This filing explained why Defendant's use of "FLSA-Compliant" written policies does not obviate Plaintiffs' entitlement to notice, why Plaintiffs' claims need not be precisely identical to the claims of every putative Collective member for notice to issue, and how Plaintiffs met the test for FLSA notice by presenting substantial evidence demonstrating Defendant's use of common policies and practices that do not accurately track Fixed-Route Drivers' actual work, or cause overtime wages to be paid for all of these employees' overtime work. *Id.* at pp. 1-8.

While the Parties were briefing these issues, Defendant was also pursuing a stay pending the result of the then-recent Sixth Circuit appeal in *Clark*. Def. Mem [Doc. 56]; Plaintiff Opp. [Doc. 58]; Def. Reply [Doc. 59]. On September 26, 2022, this Court granted Defendant's Stay Motion and held proceedings in abeyance pending the Sixth Circuit's decision in *Clark* [Doc. 63].

## II. THE SIXTH CIRCUIT'S OPINION IN *CLARK*

On May 19, 2023, the Sixth Circuit issued its Opinion in *Clark*, holding that "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Clark,* 68 F.4th at 1011. The Circuit Court suggested the "strong likelihood" standard would be familiar because it is the same standard district courts apply in the preliminary injunction setting. *Id.* at 1010 ("a district court's determination to facilitate notice in an FLSA suit is analogous to a court's decision whether to grant a preliminary injunction").

---

("judges in this district have specifically declined to consider declarations from a defendant's current employees at the conditional certification stage, finding this to be a 'premature examination of the merits of the claims'"); *Kopp v. Precision Broadband Installations, Inc.*, 2021 WL 2688520, *2 (N.D. Ohio June 30, 2021) ("By introducing these declarations, defendant attempts to create a factual dispute"); *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 770 (N.D. Ohio 2015) (defendant's declaration evidence is "best left for consideration at the decertification stage").

3

In the preliminary injunction setting, a plaintiff must show a "strong likelihood" of prevailing on the merits.  *Clark*, 68 F.4th at 1010 (describing "success on the merits" as the underlying issue on a preliminary injunction motion); *A.F., v. Association of American Medical Colleges*., 2023 WL 4072128, *7 (S.D. Ohio June 20, 2023) (analyzing likelihood of success on the merits of ADA claim).  A plaintiff shows a "strong likelihood" of prevailing on the merits in the preliminary injunction setting <u>by pleading facts sufficient to support all the elements of his claims</u>.  *A.F.*, 2023 WL 4072128 at *7; *KAM Dev., LLC v. Marco's Franchising, LLC*, 2020 WL 6146482, *2 (N.D. Ohio Oct. 20, 2020) (analyzing likelihood of success on breach of contract claim); *AtriCure, Inc. v. Meng*, 2020 WL 13613236, *10 (S.D. Ohio Feb. 3, 2020) (analyzing likelihood of success on trade secrets claim).

In the FLSA notice setting, a plaintiff must show a "strong likelihood" of demonstrating his claims are similar to the absent collective members' claims.  *Clark*, 68 F.4th at 1010 (describing "whether employees are similarly situated" as the underlying issue on an FLSA notice motion); *Branning v. Romeo's Pizza, Inc*., 594 F. Supp. 3d 927, 931 (N.D. Ohio 2022) (before facilitating notice courts must determine if the potential class members are similarly situated); *Shell v. Pie Kingz, LLC*, 415 F. Supp. 3d 769, 773 (N.D. Ohio 2019) (same).  Thus, under *Clark*, a plaintiff in the FLSA notice setting must show a "strong likelihood" that his claims are similar to the absent collective members' claims <u>by pleading facts sufficient to support that similarity</u>.  *Clark*, 68 F.4th at 1010-11 and 1018 (identifying a case, *Powers v. Blessed HomeCare, LLC*, 2019 WL 4450514, *3 (M.D. Tenn. Sept. 17, 2019), that would not meet the "strong likelihood" test because the plaintiff did not plead facts to show the policy that applied to her was either company-wide or affected other employees).

### III. THE FACTS ALLEGED IN PLAINTIFFS' NOTICE MOTION MEET THE "STRONG LIKELIHOOD" STANDARD

Plaintiffs based their motion for FLSA notice on several of Defendant's common policy documents and the sworn declaration testimony of Plaintiffs Vincent Bock, Penelope Branison, Betty Erwin, Kenneth Ford, and James Woods who, together, have worked at First Transit for over 32 years in five different states (Arizona, California, Maryland, New York, and Ohio).  Plaintiffs have shown a "strong likelihood" that their claims are similar to the absent collective members' claims by pleading the following facts:

- Throughout the relevant period, First Transit has owned, and exercised operational control over, all significant business functions relating to its Fixed-Route Drivers, including: setting and implementing the compensation, hours of work, overtime, scheduling and timekeeping policies and procedures at issue, providing training on these policies and procedures, scheduling their work, creating their daily manifests, tracking their work time, and calculating and paying their wages.[3]

- Defendant's Fixed-Route Drivers all have the same job description, which designates them as "FT," or "full-time," "non-exempt" (*i.e.,* overtime-eligible) employees whose duties primarily include travelling to designated stops on a specific route, picking up and dropping off passengers at set times, collecting fares, cleaning and maintaining the bus, completing paperwork and performing all other assigned tasks.[4]

- Defendant gives all Fixed-Route Drivers the same Employee Handbook, containing the same Wage and Hour provisions, the same overtime wage entitlement and the same meal and rest break provisions.[5]

- Defendant schedules its Fixed-Route Drivers' routes, tracks their work time and calculates their wages using the same ETIME system.[6]

- These common policies and practices cause Defendant's Fixed-Route Drivers to record less time for payroll purposes than they work, meaning they are paid no wages for significant amounts of pre-shift, meal break

---

[3] Complaint at ¶¶ 8-12 [Doc. 1].
[4] Fixed-Route Vehicle Operator Position Description [Doc. 53-4]; Bock Dec. at ¶2; Branison Dec. at ¶2; Erwin Dec. at ¶2; Ford Dec. at ¶2; Woods Dec. at ¶2 [Docs. 53-4 to 53-8].
[5] First Transit Employee Handbook [Doc. 53-10].
[6] ETIME User Guide [Doc. 53-11].

5

and post-shift work they perform each week, including overtime work.[7]

- Under Defendant's common policies and procedures, all Fixed-Route Drivers are assigned a scheduled start-time, which is the time each day when they have to drive their bus out of the depot to start their route.[8]

- To start their routes on time, Defendant's managers tell Fixed-Route Drivers to arrive at the depot 20–30 minutes early so they have enough time to complete their pre-shift routine, which includes: walking from the parking lot to the dispatch office, receiving their bus assignment manifest and keys, walking from the dispatch office to the parking lot to find their bus and completing a required pre-trip inspection (checking the bus for damage inside and out, checking the fuel level and cleaning the bus).[9]

- After finishing this work, Fixed-Route Drivers start their bus and drive it out of the depot, which is when Defendant starts tracking their time for payroll purposes, meaning their pre-shift work is not tracked or paid.[10]

- Defendant's managers obviously know that Fixed-Route Drivers perform regular, unpaid, pre-shift work because they require Drivers to arrive at work 20–30 minutes early each day to complete this work and know that no work Fixed-Route Drivers do before starting their route is tracked or paid.[11]

- Defendant automatically deducts 30 minutes from its Fixed-Route Drivers' work time each day, which is supposed to reflect their receipt of a 30-minute meal break.[12]

- However, because of the demands associated with maintaining a fixed-route schedule in light of frequent delays caused by traffic, riders, and other things, Defendant's Fixed-Route Drivers rarely receive a full, 30-minute meal break.[13]

- Defendant does not maintain a procedure for its Fixed-Route Drivers to report missed or interrupted meal breaks or claim pay for their meal

---

[7] Bock Dec. at ¶¶3-12; Branison Dec. at ¶¶3-12; Erwin Dec. at ¶¶3-12; Ford Dec. at ¶¶3-12; Woods Dec. at ¶¶3-12 [Docs. 53-4 to 53-8].
[8] Bock Dec. at ¶3; Branison Dec. at ¶3; Erwin Dec. at ¶3; Ford Dec. at ¶3; Woods Dec. at ¶3.
[9] Bock Dec. at ¶4; Branison Dec. at ¶4; Erwin Dec. at ¶4; Ford Dec. at ¶4; Woods Dec. at ¶4.
[10] Bock Dec. at ¶5; Branison Dec. at ¶5; Erwin Dec. at ¶5; Ford Dec. at ¶5; Woods Dec. at ¶5.
[11] Bock Dec. at ¶6; Branison Dec. at ¶6; Erwin Dec. at ¶6; Ford Dec. at ¶6; Woods Dec. at ¶6.
[12] Bock Dec. at ¶7; Branison Dec. at ¶7; Erwin Dec. at ¶7; Ford Dec. at ¶7; Woods Dec. at ¶7.
[13] Bock Dec. at ¶8; Branison Dec. at ¶8; Erwin Dec. at ¶8; Ford Dec. at ¶8; Woods Dec. at ¶8.

> break work, so this work is not typically tracked or paid.[14]

- Defendant's managers obviously know that Fixed-Route Drivers perform regular, unpaid, meal break work because they communicate with Drivers about the delays that cause their meal breaks to be interrupted and receive regular complaints from Drivers about not being paid for meal break work, among other things.[15]

- When Fixed Route Drivers return their busses to the depot at the end of their route, Defendant stops tracking their time for payroll purposes.[16]

- After being taken off-the-clock, Defendants' Fixed Route Drivers have to spend about 30-45 minutes on activities including: re-fueling their bus, parking their bus, performing a required post-trip inspection (checking the inside and outside of the bus for damage and cleaning the bus), completing required paperwork, walking from the parking lot to the dispatch office and waiting in line to turn-in their keys and paperwork before they can leave for the day.[17]

- Defendant's managers obviously know that Fixed-Route Drivers perform regular, unpaid, post-shift work because managers tell Drivers to do this work, see Drivers doing this work, talk to Drivers about issues with post-trip inspections and collect Drivers' completed paperwork, fares and keys long after they have been taken off-the-clock.[18]

These allegations suggest that Plaintiffs are similarly situated to the putative Collective members because, among other things, they all:

- Have the same job descriptions and requirements;

- Have the same full-time, non-exempt employment classification;

- Have the same pay scheme (*i.e.,* hourly pay for a full-time workweek with an entitlement to one-and-one-half times their regular hourly rate for all hours worked over 40 per workweek);

- Have the same meal break policy (*i.e.,* providing for a daily, 30-minute meal break with the time automatically deducted from their daily hours worked);

- Receive similar training on wage and hour policies and

---

[14] Bock Dec. at ¶9; Branison Dec. at ¶9; Erwin Dec. at ¶9; Ford Dec. at ¶9; Woods Dec. at ¶9.
[15] Bock Dec. at ¶10; Branison Dec. at ¶10; Erwin Dec. at ¶10; Ford Dec. at ¶10; Woods Dec. at ¶10.
[16] Bock Dec. at ¶11; Branison Dec. at ¶11; Erwin Dec. at ¶11; Ford Dec. at ¶11; Woods Dec. at ¶11.
[17] Bock Dec. at ¶12; Branison Dec. at ¶12; Erwin Dec. at ¶12; Ford Dec. at ¶12; Woods Dec. at ¶12.
[18] Bock Dec. at ¶13; Branison Dec. at ¶13; Erwin Dec. at ¶13; Ford Dec. at ¶13; Woods Dec. at ¶13.

>    practices;
>
> - Use the same timekeeping systems;
>
> - Have their wages calculated with the same payroll policies and by the same payroll system;
>
> - Are suffered or permitted to perform daily pre-shift work without compensation;
>
> - Are suffered or permitted to routinely experience interrupted meal breaks without being compensated for their meal break work; and
>
> - Are suffered or permitted to perform daily post-shift work without compensation.

*See Bradford v. Team Pizza, Inc.,* 2020 WL 3496150, at *3 (S.D. Ohio June 29, 2020) (similarity to other plaintiffs demonstrated by alleging facts sufficient to support an inference of knowledge about other employees' job duties, pay structures, hours worked, and unpaid overtime); *O'Neal v. Emery Fed. Credit Union*, 2013 WL 4013167, *10 (S.D. Ohio Aug. 6, 2013) (similarity to other plaintiffs demonstrated by pleading facts from which the court can draw an inference that plaintiffs know that their experience was not unique); *Day v. Columbus Pub. Sch.*, 2008 WL 11449393, *1 (S.D. Ohio Apr. 30, 2008) (similarity to other plaintiffs demonstrated by pleading facts to demonstrate similarly situated persons were treated the same way).

## IV. CONCLUSION

By pleading facts that demonstrate the existence of multiple similarities with Defendant's other Fixed Route Operators, Plaintiffs have shown a "strong likelihood" of demonstrating their claims are similar to the absent collective members' claims at the "FLSA certification" stage. Because Plaintiffs' pleadings and proof in this case meet the standard announced in *Clark*, they respectfully ask this Court to authorize dissemination of their proposed FLSA notice [Doc. 53-13].

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: June 23, 2023 | /s/ James B. Zouras |

James B. Zouras (admitted *pro hac vice*)
Teresa M. Becvar (admitted *pro hac vice*)
STEPHAN ZOURAS, LLP
222 W. Adams St., Suite 2020
Chicago, IL 60606
(312) 233-1550
jzouras@stephanzouras.com
tbecvar@stephanzouras.com

David J. Cohen (admitted *pro hac vice*)
STEPHAN ZOURAS LLP
604 Spruce Street
Philadelphia, PA 19106
(215) 873-4836
dcohen@stephanzouras.com

Daniel R. Karon (#0069394)
Beau D. Hollowell (#0080704)
KARON LLC
700 West St. Clair Avenue, Suite 200
Cleveland, OH 44113
(216) 622-1851
dkaron@karonllc.com
bhollowell@karonllc.com

*Plaintiffs' Counsel*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he caused a copy of the foregoing pleading to be served upon all record counsel by electronically filing said document *via* the Court's ECF system on June 23, 2023.

/s/ James B. Zouras