**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES WOODS, *et al.*, | ) | CASE NO. 1:21-cv-739 |
| | ) | |
| | ) | JUDGE CHARLES E. FLEMING |
| Plaintiffs, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | **AND ORDER** |
| | ) | |
| FIRST TRANSIT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## I. Procedural History

On June 29, 2022, Plaintiffs moved for FLSA conditional certification. (ECF No. 53). On July 28, 2022, Defendant filed a motion to stay proceedings until the Sixth Circuit ruled on *Brooke Clark, et al. v. A&L Home Care & Training Ctr.*, No. 22-3101 (6th Cir.). (ECF No. 56). On September 26, 2022, the Court granted Defendant's motion and stayed this case pending a decision in *Clark*. (ECF No. 63). On May 19, 2023, the Sixth Circuit issued their decision in *Clark*. *Clark v. A&L Homecare and Training Center, LLC*, 68 F.4th 1003 (6th Cir. 2023). Subsequently, Plaintiffs and Defendant filed supplemental briefing to address how the *Clark* decision affects Plaintiffs' prior motion and to update any argument and analysis regarding the request to send FLSA notice to similarly situated employees. (ECF Nos. 65 and 66). Defendant then submitted five notices of supplemental authority. (ECF Nos. 67, 68, 69, 70, and 72).

Due to the Sixth Circuit's decision in *Clark*, the Court will construe Plaintiffs' motion as a motion requesting court-supervised notice to potential plaintiffs pursuant to 29 U.S.C. § 216(b), rather than a motion for conditional certification.

1

## II. Legal Standard

The FLSA requires employers to pay a federal minimum wage and overtime to certain types of employees. 29 U.S.C. §§ 206(a), 207(a). Those employees can sue for any alleged violations of those mandates on "behalf of ... themselves and other employees similarly situated." *Id.* § 216(b). For a similarly situated employee to join the action as a party plaintiff, that individual must give "his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.* The Sixth Circuit had not definitively weighed in on how that process should occur until they issued their decision in *Clark*. *Clark* rejected the frequently used two-step approach, where the first step considered "conditional certification" and the second step considered "final certification." *Clark*, 68 F.4th at 1008. The Sixth Circuit rejected the notion that the notice determination involved any type of "certification" because FLSA collective actions are not representative, unlike class actions under Fed. R. Civ. P. 23 from which courts borrowed the term "certification." *Id*. at 1009.

The clarified standard for a district court to facilitate notice of an FLSA suit to other employees is that "the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id*. at 1011. This standard requires "a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id*. Being similarly situated for the purpose of joining an FLSA suit typically depends on whether the employees "performed the same tasks and were subject to the same policies—as to both timekeeping and compensation—as the original plaintiffs were." *Id*. at 1010. Whether plaintiffs are subject to individualized defenses is a factor in the similarly situated analysis. *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir. 2019). The point of the similarly situated inquiry is "to determine whether the merits of other-employee claims

would be similar to the merits of the original plaintiffs' claims—so that collective litigation would yield 'efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.'" *Clark*, 68 F.4th at 1012.

### III.     Analysis

Plaintiffs rely on the evidence attached to their initial motion to argue in their supplemental briefing that they have met the standard to show a "strong likelihood" that the employees to whom Plaintiffs seek to send notice are similarly situated to Plaintiffs. (ECF No. 65). Throughout the supplemental briefing, Plaintiffs state that they can meet the "strong likelihood" standard by merely "pleading facts sufficient to support that similarity." *Id*. However, the standard dictated in *Clark* is an evidentiary standard, not a pleading standard. The *Clark* "strong likelihood" evidentiary standard "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance" of evidence. *Clark*, 68 F.4th at 1011. Plaintiffs merely alleging that they are similarly situated to the proposed group of employees does not make it so. *Clark* requires more than that.

Thus, the Court must "determine whether the merits of other-employee claims would be similar to the merits of the original plaintiffs' claims." *Id*. at 1012. The Court looks to the evidence provided by Plaintiffs and Defendant in their briefing to make that determination.

Plaintiffs request to send notice to any full-time employee of First Transit that drove a fixed-route bus in any week during the last three years. (ECF No. 53, PageID 564). In support of that request, Plaintiffs provided a position description for "Driver FT," "General Descriptions of Fixed Route Vehicle Operator," declarations of the two named Plaintiffs and three opt-ins, the First Transit employee handbook, and the "Etime User Guide." (ECF No. 53, PageID 596–644). None of this evidence contains documentation suggesting that First Transit has the unlawful

3

policies alleged. The only evidence of pre-trip and post-trip unpaid overtime and automatically deducted meal breaks is presented in five self-serving declarations from the two named Plaintiffs and three opt-ins. (ECF No. 53, PageID 600–09). The five declarations are nearly identical; the only differing information concerns where the individual worked and how long they worked there. *Id*. Each declaration has three sections alleging issues with pre-trip unpaid overtime, meal break unpaid overtime and post-trip unpaid overtime. *Id*. A major difference in the language of the declarations is in the declaration of Betty Erwin who states, "sometime in 2020, when so many people were complaining about working through meals that we sometimes received a 'meal break penalty' payment on days we complained about a missed meal break." (ECF No. 53, PageID 605). Already, Erwin is not similarly situated to named Plaintiffs because she was allegedly subject to a policy that provided a recourse for missed meal breaks.

Defendant submitted a significant amount of evidence highlighting other major differences between the named Plaintiffs and the opt-ins. Defendant included a declaration from the General Manager of First Transit's Cuba, New York depot, Tom Donnarumma. (ECF No. 57, PageID 726). The declaration clarifies that named Plaintiff Vincent Bock was subject to a collective bargaining agreement at the Cuba location, which Defendant provided. *Id*. Bock worked there until his resignation on September 13, 2021. *Id*. Bock's declaration stated that he worked for First Transit until October 2020. (ECF No. 53, PageID 600). Defendant submitted Bock's resignation email, dated September 13, 2021, that stated that he "will look back on [his] time at First Transit

4

with fond memories." (ECF No. 57, PageID 749).¹ At the rural outpost in Wellsville, New York where Bock drove, the drivers are compensated based on start time, end time, and break times that they recorded and signed for on their daily time sheets. (ECF No. 57, PageID 727). Donnarumma stated, "[d]rivers, including Bock, are expected to record their actual arrival time, which is not based on when they drive their bus out of the Wellsville outpost." *Id*. The Union Steward for the Cuba location confirmed this information and stated, "[w]e are paid according to the time we manually write on our time sheets" and "we are told not to arrive before the scheduled start of our shifts." (ECF No. 57, PageID 817).

A declaration from the General Manager of First Transit's Elyria, Ohio depot, Debra Dillingham, reveals that named Plaintiff James Woods was subject to a collective bargaining agreement. (ECF No. 57, PageID 761). She asserts a collective bargaining agreement has been in effect at that location since 1997. *Id*. Woods drove a fixed-route bus three times during his employment with First Transit from November 2018 to April 2019. (ECF No. 57, PageID 761–62). Two collective bargaining agreements applied to the time that Woods worked. *Id*. Defendant provided a copy of both agreements. *Id*. Both collective bargaining agreements contain the same language concerning compensation: "All drivers shall be allowed fifteen (15) minutes before the start of their shift with pay to pre-trip and warm up vehicles. Drivers shall be allowed up to ten (10) minutes following pull-in to clock out, or until the count is completed if delayed further through no fault of the employee." (ECF No. 57, PageID 774 and 804). The Elyria location does

---

¹ The Court is troubled by these discrepancies. Bock's declaration states that he left the employ of First Transit nearly a year before his own resignation email indicates he left. There is nothing before the Court to explain this glaring difference between his declaration and his resignation letter. This leaves the Court with no choice but to question his credibility. This is exacerbated by the fact that this matter was filed in April 2021, before First Transit claims Bock left its employ. (ECF No. 1). Given the proximity between his resignation from First Transit and the filing of this matter (in which Bock is a named Plaintiff), it is difficult to fathom why there is any discrepancy regarding his resignation date.

5

not deduct time for meal breaks because no drivers get meal breaks and instead must "eat whenever they can during their route." (ECF No. 57, PageID 762). "Since the drivers don't get meal breaks, they do not clock in or out for this break during their workday. The drivers get paid from the time they clock in until the time they clock out at the end of the day." *Id*. The Union Steward for the Elyria location affirmed that information and stated, "no work is done until the driver clocks in" and "[a]ll post-trip work is done before clocking out." (ECF No. 57, PageID 814–15).

A declaration from the General Manager of First Transit's East Bay location in Northern California, Robert Saunders, stated that First Transit had a location in Oakland, California until it closed in January 2020. (ECF No. 57, PageID 753). Neither the Oakland location nor the East Bay location has ever had fixed-route drivers. *Id*. Opt-in Betty Erwin wrote in her declaration that she worked as a fixed-route bus driver for First Transit from July 2001 to December 31, 2020 at their Oakland, California location. (ECF No. 53, PageID 604). Erwin's last paycheck from First Transit was dated February 7, 2020. (ECF No. 57, PageID 755). As it was impossible for Erwin to have ever driven a fixed route, there is not a strong likelihood she is similarly situated to the named Plaintiffs.[2]

The Project Manager of First Transit's Capital Heights, Maryland depot, William Ford, clarified that First Transit does not have and has never had a Silver Springs, Maryland location. (ECF No. 57, PageID 757). First Transit had a Gaithersburg, Maryland location that closed permanently in July 2018. *Id*. Neither the Gaithersburg nor the Capital Heights location has had fixed-route drivers since 2015. *Id*. Opt-in Penelope Branison identified in her declaration that she

---

[2] The Court is yet again troubled by the irreconcilable differences between Ms. Erwin's representations and those of General Manager Saunders. In her declaration, Erwin stated under penalty of perjury that she drove a fixed-route bus for over 19 years at the Oakland location and did so until December 2020. General Manager Saunders says that location has NEVER had fixed route drivers, and it closed in January 2020. Both statements cannot be correct, and there is nothing before the Court to explain these discrepancies.

most recently worked for First Transit in September and October 2019 as a full-time fixed-route bus driver in Silver Springs, Maryland.  (ECF No. 53, PageID 602).  A declaration from the Regional HR Manager of First Transit clarified that Branison was last employed by First Transit from May 30, 2017 to July 10, 2017 at the Gaithersburg location that closed on June 30, 2018.  (ECF No. 57, PageID 759).  As it was impossible for Branison to drive a fixed route during the requisite time, there is not a strong likelihood she is similarly situated to the named Plaintiffs.[3]

The General Manager of First Transit's Phoenix, Arizona depot confirmed that opt-in Kenneth Ford is employed still as a fixed-route driver at that location in a declaration dated July 25, 2022.  (ECF No. 57, PageID 818–20).  There is a collective bargaining agreement in place at that location since 2007.  (ECF No. 57, PageID 818).  First Transit schedules drivers at the Phoenix location to start twenty minutes before their route begins so that drivers can perform any pre-route work.  (ECF No. 57, PageID 819).  Drivers are responsible for clocking in at a time clock located at the dispatch office before receiving their bus keys from the dispatcher.  *Id*.  The scheduled end time of each shift is five minutes after the route ends to allow for post-route work.  *Id*.  However, drivers must clock out at the time clock in the dispatch office after they complete their work for the day and are paid according to that time, not the time for which they were scheduled.  *Id*.  The Phoenix collective bargaining agreement in effect from July 1, 2017 to June 30, 2022 specifies that if a driver takes a break of one hour or less, then that time is paid "as continuous time at the

---

[3] It is not lost on the Court that Ms. Branison alleges to have been a fixed-route driver at First Transit's Silver Springs, Maryland location.  However, Project Manager Ford says there has never been a Silver Springs location, and the location where Branison worked (Gaithersburg, Maryland) did not have fixed-route drivers.  Information before the Court is also divergent regarding when she worked.  She states she last worked for First Transit in 2019.  First Transit's Regional HR Manager asserts she last worked for the company in 2017, and the location where she worked was closed in June 2018.  These recurrent, unexplained discrepancies do not further the Plaintiffs' goal of showing that there is a strong likelihood that the persons to whom Plaintiffs seek to send court-supervised notice are similarly situated.  To the contrary, they raise serious, unanswered questions as to whether the named Plaintiffs and the opt-ins are similarly situated.

regular rate of pay." (ECF No. 57, PageID 855).

First Transit's Director of Payroll, Calvin Welch, stated in a declaration, "[t]he First Transit payroll department does not automatically deduct 30-minute meal periods from employees' time or compensation. Any change or adjustment to time is done at each First Transit location." (ECF No. 57, PageID 755).

The evidence submitted by Defendant highlights that the employees at different First Transit locations are subject to different policies concerning how they report their time, how their schedules are set, what time is paid, if they receive meal breaks or not, how meal breaks are paid, etc. Counsel for Defendant signed a declaration stating that over the course of discovery, Defendant identified forty-three different applicable collective bargaining agreements for the 104 First Transit locations where fixed-route drivers worked. (ECF No. 57, PageID 723–24). As shown by the collective bargaining agreements provided to the Court, each of those locations is subject to a unique set of policies and procedures laid out in their agreement. Plaintiffs failed to present evidence to contest the veracity of the evidence submitted by Defendant, nor did they address the discrepancies between Defendant's evidence and their proffered declarations. Plaintiffs did not introduce any evidence of a company-wide policy that is binding on all First Transit fixed-route drivers that potentially violates the FLSA.

Accordingly, Plaintiff has failed to demonstrate a strong likelihood that the employees to whom they seek to send notice are similarly situated to them. Plaintiffs' motion requesting court-supervised notice (ECF No. 53) is **DENIED**.

**IT IS SO ORDERED**.

Dated: September 27, 2023

_____
**HONORABLE CHARLES E. FLEMING**
**UNITED STATES DISTRICT JUDGE**