**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **JAMES WOODS, for himself** ) <br> **and all others similarly situated,** ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> **FIRST TRANSIT, INC.,** ) <br> ) <br> **Defendant.** ) <br> ) | Case No. 21-cv-739 <br><br> Judge Charles Esque Fleming |

**JOINT MOTION AND MEMORANDUM OF LAW
FOR APPROVAL OF THE PARTIES' FLSA SETTLEMENT
INCLUDING ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

First Transit, Inc. ("First Transit"), James Woods and Vincent Bock ("Named Plaintiffs"), the three Opt-In Plaintiffs and the 286 people who have worked as fixed-route bus drivers for First Transit in Ohio since April 6, 2019 ("Plaintiffs") (collectively, "the Parties"), jointly move the Court for an Order approving the settlement reached in this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. The Parties have negotiated a settlement of this *bona fide* dispute following significant motion practice, the exchange of substantial discovery to inform the Parties damage calculations, extensive arm's-length negotiations conducted by counsel well-versed in wage and hour litigation and a settlement conference overseen by Magistrate Judge Jonathan D. Greenberg.

The Parties submit the terms of their proposed Settlement Agreement (the "Agreement") are fair, reasonable, and adequate, particularly considering the existence of many disputed issues of fact and law with respect to liability, damages, and the propriety of collective treatment, and

1

additional uncertainty as to whether Plaintiffs would obtain a judgment in their favor, along with the risks of trial and possible appeals. *See generally* Settlement Agreement (Exhibit A).

## I. BACKGROUND

### A. Procedural History

On June 29, 2022, Plaintiffs filed a Motion for FLSA conditional certification, seeking leave to disseminate notice to a putative Collective defined to include: "all people who have worked as a full-time employee of First Transit and drove a fixed-route bus in any week during the last three years." Notice Memo, p.1 [Doc. 53-2].[1] In support of their Motion, Plaintiffs introduced Defendant's Fixed Route Operator job description, nationwide Employee Handbook, and E-Time User Guide as well as sworn declarations from First Transit drivers describing their personal experiences across more than 32 years of employment in five different states (Arizona, California, Maryland, New York and Ohio), their familiarity with Defendant's policies and practices, their interactions with managers responsible for implementing Defendant's hours of work, meal break, overtime, time reporting, and payroll policies, and their discussions with putative Collective members who claimed the same problems with unpaid pre-shift, meal break and post-shift work. [Docs. 53-4 to 53-11].

On July 28, 2022, Defendant opposed Plaintiffs' Motion, principally claiming that each of its locations is "unique" and all its policies are "lawful," challenging Plaintiffs' credibility, and suggesting the putative Collective members do not share claims supported by common evidence. Def. Mem. [Doc. 57].

---

[1] Defendant estimated that, in 2022, it employed 3,365 full-time Fixed-Route Drivers in 71 locations, not including former Drivers or full-time employees with other job titles who also drive fixed-route busses. See Jan. 26, 2022 Frondorf Letter, pp. 7-8 (71 locations); Feb. 14, 2022 Frondorf Letter, pp. 6-8 (3,365 Drivers) [Doc. 53-3].

On August 18, 2022, Plaintiffs filed a Reply in support of their Motion. [Doc. 59]. This filing explained why Defendant's use of "FLSA-Compliant" written policies does not obviate Plaintiffs' entitlement to notice, why Plaintiffs' claims need not be precisely identical to the claims of every putative Collective member for notice to issue, and how Plaintiffs met the test for FLSA notice by presenting substantial evidence demonstrating Defendant's use of common policies and practices that do not accurately track Fixed-Route Drivers' actual work, or cause overtime wages to be paid for all of these employees' overtime work. Id. at pp. 1-8.

While the Parties were briefing these issues, Defendant was also pursuing a stay pending the result of the then-recent Sixth Circuit appeal in *Clark*. Def. Mem [Doc. 56]; Plaintiffs' Opp. [Doc. 58]; Def. Reply [Doc. 59]. On September 26, 2022, this Court granted Defendant's Motion to Stay and held proceedings in abeyance pending the Sixth Circuit's decision in *Clark* [Doc. 63].

In June 2023, after the Sixth Circuit issued its decision in *Clark*, the Parties filed supplemental briefs on the propriety of issuing nationwide notice, *see* Plaintiffs' Mem. [Doc. 65]; Def. Mem [Doc. 66], as well as multiple additional submissions, *see* [Docs. 67-70, 72]. On September 27, 2023, this Court entered an Opinion and Order denying Plaintiffs' request to issue nationwide notice, finding that: "the evidence submitted by Defendant highlights that the employees at different First Transit locations are subject to different policies concerning how they report their time, how their schedules are set, what time is paid, if they receive meal breaks or not, how meal breaks are paid, etc." Opinion, p.8 [Doc 73].

On October 30, 2023, the Parties filed a Joint Status Report expressing a willingness to pursue mediation with a Magistrate Judge and, thereafter, began to confer on the relevant issues. [Doc. 74]. On February 23, 2024, the parties filed a Joint Motion seeking referral to Magistrate

3

Judge Greenberg for a settlement conference, ultimately conducted on April 26, 2024. [Docs. 76-77].

Having completed this settlement conference and reached a negotiated settlement overseen by Magistrate Judge Greenberg, the Parties now seek this Court's approval of a proposed FLSA settlement in which Defendant has agreed to pay $200,000.00 to resolve the claims of 291 people who have worked as fixed-route bus drivers for First Transit in Ohio since April 6, 2019.

B.  **Legal Background**

The FLSA requires employers to pay employees for all hours worked, including a "time-and-one-half" overtime premium for all hours worked over 40 in a workweek. *See* 29 U.S.C. §§ 206-207. The FLSA does not specifically define what is meant by the term "work," *id*., but the Department of Labor has promulgated regulations containing "Principles for Determination of Hours Worked" to inform this issue. *See* 29 C.F.R. §§ 785.11-785.13. These principles state that any work an employer "suffers or permits" to be performed must be counted as hours worked when the employer "knows or has reason to believe" the work is being performed:

> **§ 785.11 General.**
> *Work not requested but suffered or permitted is work time*. For example, an employee may voluntarily continue to work at the end of the shift. He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste work tickets, prepare time reports or other records. The reason is immaterial. *The employer knows or has reason to believe that he is continuing to work and the time is working time* (citations omitted).
>
> **§ 785.12 Work performed away from the premises or job site.**
> *The rule is also applicable to work performed away from the premises or the job site, or even at home. If the employer knows or has reason to believe that the work is being performed, he must count the time as hours worked.*
>
> **§ 785.13 Duty of management.**
> *In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it*

4

> *to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.*

*See* 29 C.F.R. §§ 785.11-785.13 (emphasis added). Plaintiffs allege that Defendant violated the FLSA and its implementing regulations because it did not pay Plaintiffs all overtime wages owed for work they performed before their scheduled route start-time.

## II. THE PARTIES' PROPOSED SETTLEMENT

The Parties, with the assistance of Magistrate Judge Greenberg, negotiated for the payment of a gross settlement amount of $200,000.00 to resolve all claims that were asserted, or could have been asserted, by Plaintiffs (*i.e.,* the Opt-In Plaintiffs and all First Transit fixed-route bus drivers employed in Ohio since April 6, 2019) against Defendant, including claims for attorneys' fees, costs, liquidated damages, and claims arising from disputes related to wages. As outlined in Section 1 of the Agreement, the Parties propose to distribute this sum as follows:

1. Approximately $53,888.00 as alleged wage-based damages allocated on a *pro rata* basis among the Plaintiffs;

2. Approximately $53,888.00 as alleged non-wage liquidated damages allocated on a *pro rata* basis among the Plaintiffs;

3. $12,000.00 to Named Plaintiffs James Woods and Vincent Bock ($6,000.00 each) as Service Awards;

4. $4,175.00 in litigation costs to Stephan Zouras LLC (to be shared with Karon LLC);

5. $6,050.00 in settlement administration costs to Analytics LLC; and

6. $70,000.00 in fees to Stephan Zouras LLC (to be shared with Karon LLC).

The $107,775.00 allocated to the 291 Plaintiffs represents a fair and reasonable result because of the uncertainty of determining whether Defendant violated the FLSA, determining whether the proposed class would be certified or decertified, proving the unpaid overtime the 291

Plaintiffs worked, and because of considerations associated with the risks, costs, and delays associated with continuing this litigation on a contested basis.

By cashing their settlement checks, Plaintiffs will release Defendant from "all wage-related charges, complaints, claims, and liabilities of any kind whatsoever, known or unknown, suspected or unsuspected, which Plaintiffs at any time have, had, or claimed to have against First Transit, including all claims under the Fair Labor Standards Act and state wage laws." *See* Agreement at § 5(a). Any Plaintiff who does not timely sign and cash their settlement check will not be bound by any release of claims.

### III. STANDARD FOR SETTLEMENT APPROVAL

Considering the lack of direct guidance from the Sixth Circuit on the approval process for FLSA settlements, Courts in this Circuit typically follow the process set forth by the Eleventh Circuit in *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). *See, e.g., Pitty v. Conrad's Laserwash Co., Inc.*, 2023 WL 7166917, *1 (N.D. Ohio Oct. 31, 2023); *Rafferty v. Hat World, Inc.,* 2020 WL 5703925, *1 (N.D. Ohio Sept. 24, 2020). Under *Lynn's Food*, a district court "must scrutinize the proposed settlement for fairness and determine whether the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Pitty,* 2023 WL 7166917 at *1. To make this determination, courts in this District typically consider several factors, including: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *Id.* The Parties' proposed settlement satisfies all these considerations.

6

**IV. THE COURT SHOULD APPROVE THE PARTIES' PROPOSED SETTLEMENT**

**A. The Proposed Settlement Is Fair And Reasonable Considering The Lack Of Fraud Or Collusion Behind The Settlement**

Under this factor, courts consider if the proposed settlement is a result of arm's-length negotiations between parties represented by able counsel, and whether fraud or collusion can be seen on the face of the parties' agreement. *Tina Ulm v. Artemis Care LLC*, 2024 WL 149755, *2 (N.D. Ohio Jan. 12, 2024); *Ramsey v. FirstEnergy Corp.*, 2023 WL 6794478, *3 (N.D. Ohio Oct. 13, 2023). Here, the Parties are represented by experienced wage and hour and class action counsel and negotiated this settlement with the direct involvement of Magistrate Judge Greenberg, who ensured both that the Parties' negotiations took place at arm's-length and that the settlement's material terms do not involve fraud or collusion. Zouras Dec. ¶¶ 6-7, 11-13, 16 (Exhibit B).

**B. The Proposed Settlement Is Fair And Reasonable Considering The Complexity, Expense, And Likely Duration Of The Litigation**

Under this factor, courts consider if the proposed settlement is justified by the complexity, expense, and likely duration of the litigation. It is well-established that class and collective actions involve sufficient complexity to satisfy this factor. *Lucyk v. Materion Brush Inc.*, 2023 WL 4405280, *3 (N.D. Ohio July 7, 2023). Further, although this matter has been pending since April 6, 2021, it was stayed for nine months (September 2022 to June 2023) pending the result of *Brooke Clark v. A&L Home Care & Training Ctr.*, a Sixth Circuit appeal that clarified the standard for FLSA certification, and was on-hold for another six months (November 2023 to April 2024) to allow the Parties to exchange discovery and prepare for mediation. As a result, the Parties have not yet completed all case discovery, briefed class certification, or received all merits rulings that would be necessary to resolve Plaintiffs' claims, and substantial additional expenditures of time and money would be required to conclude the case absent settlement.

### C. The Proposed Settlement Is Fair And Reasonable Considering The Stage Of The Proceedings And The Amount Of Discovery Completed

Under this factor, courts consider if the parties have engaged in enough discovery to adequately assess and evaluate merits, liability, and damages issues. *Pavlov v. Cont'l Cas. Co.*, 2009 WL 10689011, *9 (N.D. Ohio Oct. 7, 2009). As referenced above, the Parties in this case agreed to engage in settlement negotiations in October 2023, *see* Oct. 30, 2023 Joint Report [Doc. 74] and, from this time to their mediation on April 26, 2024, had ample opportunity to investigate and understand the key merits, liability, and damages issues in this action all informed by the almost 2,400 pages of documents exchanged relating to their claims and defenses, including the pay rates, dates of employment, job duties, time and payroll records, policies, manuals, and damages at issue in this action. Zouras Dec. ¶¶ 8, 10, 13, 16, 18, 27 (Exhibit B). These efforts demonstrate that the Parties' settlement is adequately informed.

### D. The Proposed Settlement Is Fair And Reasonable Considering The Probability Of Plaintiffs' Success On The Merits

This factor requires courts to assess whether the litigation "is uncertain in terms of duration, cost, and result" and, if so, to what extent this analysis supports the proposed settlement. *Harsh v. Kalida Mfg., Inc.*, 2021 WL 4145720, *6 (N.D. Ohio Sept. 13, 2021).

In this case, Plaintiffs challenge whether Defendant has adequately tracked and paid its fixed-route bus drivers for all the pre-shift, meal break, and post-shift work they claim to have performed. *See* Complaint at ¶¶ 12-27 [Doc. 1]. Defendant denies all these allegations and, at mediation, produced evidence refuting these allegations as to the one Named Plaintiff who worked for Defendant in Ohio. Zouras Dec. ¶ 13 (Exhibit B). Further, Defendant denies that Plaintiffs' claims, such as they are, can be collectively resolved given claimed differences in the policies and procedures applied in its three Ohio work locations. As a result, the Parties have a good-faith basis

to disagree, not only about whether Plaintiffs' claims can proceed on a collective basis, but also whether these claims can (or should) survive summary judgment or prevail on the merits.

Because of the significant disparity between their positions, both Parties face substantial risk and uncertainty from continued litigation, including significant expenses associated with prosecuting or defending these claims and any appeals, and potential disruption to their lives, continued business operations, and union negotiations. Accordingly, without conceding their opponent's conclusions, both Parties agree that proceeding with the settlement set forth in their Agreement is in their best interests. This situation necessarily demonstrates that the Parties' proposed settlement is fair and reasonable considering the probability of Plaintiffs' success on the merits. *Gresky v. Checker Notions Co. Inc*., 2022 WL 3700739, \*6 (N.D. Ohio Aug. 26, 2022) (finding similar considerations favor approval); *Harsh v. Kalida Mfg., Inc*., 2021 WL 4145720, \*6 (N.D. Ohio Sept. 13, 2021) (same).

### E. The Proposed Settlement Is Fair And Reasonable Considering The Range Of Possible Recovery

Under this factor, courts consider "both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery)." *In re Polyurethane Foam Antitrust Litig*., 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016).

Approaching the mediation, Defendant placed a *de minimis* value on Plaintiffs' claims and, for most of the mediation, was willing to offer only an insubstantial amount to resolve Plaintiffs' claims. Zouras Dec. ¶ 13 (Exhibit B). During the mediation, defense counsel presented multiple arguments against the cohesiveness and merit of Plaintiffs' claims, including that: Plaintiffs were routinely paid for their pre- and post-shift work; Plaintiffs did not experience daily meal break time deductions and, instead, were paid from sign-in to sign-out; Plaintiffs worked under CBAs containing different material terms; and Plaintiffs did not routinely work over 40 hours per week.

9

As a result, defense counsel were confident that Plaintiffs' entitlement to unpaid overtime wages would require an individual analysis. Further, Defendant had, and (absent settlement) still has, the ability to raise all these arguments to challenge not only Plaintiffs' entitlement to proceed on a representative basis but also the merit of their claims.

Informed by all the information exchanged between the Parties, Plaintiffs' counsel performed a best-case damage calculation of $578,000.00 recoverable for Plaintiffs' unpaid pre-shift work. Zouras Dec. ¶ 13 (Exhibit B). The $200,000.00 value of the Parties' settlement represents 35% of this calculation. *Id.* Considering the substantial risks Plaintiffs would face in securing class certification, surviving summary judgment, and prevailing at trial presided-over by a Judge who has already denied their motion to issue nationwide FLSA notice, *see* Sept. 27, 2023 Opinion [Doc. 73], they believe this recovery represents a fair result. After deductions for the proposed service awards, attorney's fees, and cost reimbursement, Plaintiffs anticipate being able to distribute approximately $108,000.00 in damages to the 291 class members, providing an average award of approximately $371.00. Settlement Agreement at § 1 (Exhibit 1).

As such, the Parties believe their proposed settlement is fair and reasonable considering the range of possible recovery. *See In re Polyurethane Foam*, 168 F. Supp. 3d at 1001 ("because [s]ettlement is the offspring of compromise; the question...is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion"); *Gordon v. Dadante*, 2008 WL 1805787, *13 (N.D. Ohio Apr. 18, 2008), *aff'd*, 336 Fed. Appx. 540 (6th Cir. 2009) ("due to the risks of litigation and the costs of litigation in time and money, a reasoned settlement need not necessarily rise to the level of 100% of the actual damages figure. Instead, a number that both accurately compares an estimate of the percentage chance of success, and accounts for the costs of litigation, may fall well short of that threshold").

10

### F. The Proposed Settlement Is Fair And Reasonable Considering The Opinions Of Counsel

Last, courts are asked to consider the opinions of counsel who have negotiated the settlement in assessing its fairness.  Here, counsel for the Parties believe the Settlement they negotiated with the assistance of Magistrate Judge Greenberg is fair and reasonable considering the risk, costs, and delay of further litigation.  Zouras Dec. ¶ 16 (Exhibit B).  Courts routinely consider similar opinions to support settlement approval.  *Reitz v. Laurel Lake Retirement Community, Inc.*, 2024 WL 1514549, *2 (N.D. Ohio Apr. 8, 2024); *Lucyk v. Materion Brush Inc.*, 2023 WL 4405280, *5 (N.D. Ohio July 7, 2023); *Gresky v. Checker Notions Co. Inc.*, 2022 WL 3700739, *2 (N.D. Ohio Aug. 26, 2022).

### V. CONCLUSION

For the reasons set forth above, the Parties respectfully ask the Court to enter their proposed Order granting the instant Motion and approving the Parties' proposed settlement in its entirety.

Respectfully submitted,

| | |
|---|---|
| */s/ David J. Cohen* | */s/ Matthew J. Hank* |
| David J. Cohen (*pro hac vice*) | James P. Smith, Bar No. 0073945 |
| STEPHAN ZOURAS, LLC | Alex R. Frondorf, Bar No. 0087071 |
| 604 Spruce Street | LITTLER MENDELSON, P.C. |
| Philadelphia, PA 19106 | Key Tower |
| (215) 873-4836 | 127 Public Square, Suite 1600 |
| *dcohen@stephanzouras.com* | Cleveland, OH  44114-9612 |
| | Telephone:    216.696.7600 |
| James B. Zouras (*pro hac vice*) | Facsimile:     216.696.2038 |
| Teresa M. Becvar (*pro hac vice*) | *jpsmith@littler.com* |
| STEPHAN ZOURAS, LLC | *afrondorf@littler.com* |
| 220 W. Adams Street, Suite 2020 | |
| Chicago, IL  60606 | Matthew J. Hank, Admitted *Pro Hac Vice* |
| (312) 233-1550 | Kimberly Saginario, Admitted *Pro Hac Vice* |
| *jzouras@stephanzouras.com* | LITTLER MENDELSON, P.C. |
| *tbecvar@stephanzouras.com* | 1601 Cherry Street, Suite 1400 |

Daniel R. Karon  
KARON LLC  
700 W. St. Clair Avenue, Suite 200  
Cleveland, OH 44113  
(216) 622-1851  

*Attorneys for Plaintiffs*

Philadelphia, PA 19102-1321  
Telephone:     267.402.3000  
Facsimile:     267.402.3131  
*mhank@littler.com*  
*ksaginario@littler.com*  

*Attorneys for Defendant*